UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**TRAVIS DELANEY WILLIAMS**,

                Plaintiff,

v.                                **Case No. 14-cv-792-pp**

**DR. ORTIZ,
LT. FRIEND,
ISFERDING,
BELLEW,
HERNANDEZ,
KELLY,
NURSE BILL, and
NURSE JIM,**

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE
TO PROCEED *IN FORMA PAUPERIS* (DKT. NO. 2) AND SCREENING
PLAINTIFF'S COMPLAINT**

      Travis Delaney Williams, a state prisoner, filed a *pro se* complaint under 42 U.S.C. §1983, alleging that his civil rights were violated at the Racine County Jail. Dkt. No. 1. This order resolves the plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2), as well as screening the plaintiff's complaint.

**I.    MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS***

      The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil case-filing fee, as long as he meets certain

1

conditions. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

However, a prisoner will not be prohibited from bringing a civil action for the reason that he lacks the assets and means to pay an initial partial filing fee. 28 U.S.C. §1915(b)(4). Judge Randa, the judge previously assigned to this case, determined that the plaintiff lacked the funds to pay an initial partial filing fee. Dkt. No. 5. Accordingly, this court will grant the plaintiff's motion for leave to proceed *in forma pauperis*, and will allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## II.     SCREENING OF THE PLAINTIFF'S COMPLAINT

### A.     Standard for Screening Complaints

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint or portion thereof if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous "'when it lacks an arguable basis either in law or in fact.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v.

2

Williams, 490 U.S. 319, 325 (1989)). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the factual contentions are clearly "baseless." Neitzke, 490 U.S. at 327. "Malicious," although "sometimes treated as a synonym for 'frivolous,' . . . is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (internal citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

3

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.   Facts Alleged in the Complaint

The plaintiff's complaint details interactions he had with staff at the Racine County Jail in June and July of 2014. Dkt. No. 1. According to the plaintiff, defendant correctional officer Hernandez wrote false disciplinary tickets about the plaintiff on June 4 and June 5, 2014. Id. at 3. The plaintiff further asserts that Hernandez conversed with defendant correctional officer Isferding and agreed to lock the plaintiff in his cell without justification. Id.

4

At lunch (presumably on June 5, although the plaintiff does not make this clear), Isferding gave the plaintiff a contaminated food tray, but the plaintiff does not provide details regarding the contamination. Id. When the plaintiff pointed out the foreign contents, Isferding became argumentative about ordering the plaintiff a new tray. The plaintiff asked to see a doctor or nurse because he had swallowed a lot of the allegedly contaminated food. Isferding then told the plaintiff to calm down and that he had ordered him new food. When the new food tray arrived, Isferding scraped off the fresh food onto the contaminated tray at the direction of Hernandez. The plaintiff asked Isferding to call a sergeant or lieutenant because he believed Isferding was conspiring with Hernandez to deny the plaintiff adequate food and medical care. Hernandez told Isferding to go to the pod, and then forced the plaintiff into the cell. When Isferding reached for the plaintiff, the plaintiff told him to smile for the camera because it would be an assault on an inmate for him to touch the plaintiff. At that point, Isferding left the pod and called for other officers to come up. Id.

When other officers arrived, defendant Lt. Friend ordered defendant correctional officer Bellew to go through the plaintiff's things and start throwing away any contraband, and to send "all excessive stuff" to the property department to be inventoried. Id. at 4. The plaintiff alleges that instead of defendant Friend's directions being followed, property that should have been deemed excessive (versus contraband) was thrown away, and all contraband

5

was placed in the central booth and reissued to other inmates later in the day, which was against the rules and regulations of the jail. Id.

Patrick J. Noonan (the plaintiff does not explain this person's identity-- presumably he was a member of the jail staff) came to the plaintiff's cell while he was "sick as hell" from the contaminated food, and asked the plaintiff about a disciplinary hearing. Id. 4. The plaintiff answered some questions but was not physically able to answer others. The next thing the plaintiff knew, he was in segregation for refusing to comply with a disciplinary hearing. He received twenty days of discipline without a hearing. Id.

The plaintiff further alleges that on June 5, 2014, he discovered that when his property "arrived back" to him, some of his criminal documents were missing, as well as a number of hygiene items. Id. at 5. Although he wrote grievances about this, and notified his criminal attorney, the captain told him that he had received his items. Another officer told the plaintiff that he would note the missing items in the computer, and would get the plaintiff a basic hygiene kit. Id.

The plaintiff also describes a number of problems with getting and keeping a medical double mattress accommodation. On June 10, 11, and 12, 2014, Isferding called medical and said that the plaintiff did not need a medical double mattress from 8:00 a.m. to 8:00 p.m. while in disciplinary segregation. Isferding told this to a medical secretary, and she approved the removal of the plaintiff's extra mattress, which had been approved for medical purposes. Id.

6

Isferding then talked to Nurse Jim and got the mattress taken away (it is not clear if this was the double mattress, or the entire mattress). Id.

On June 12, 2014, Nurse Bill assisted Dr. Ortiz in examining the plaintiff. Id. at 6. Nurse Bill told Dr. Ortiz that even if he ordered a double mattress, the plaintiff may not get it if security objected. After the plaintiff saw the doctor, Isferding called medical again and talked to Nurse Jim and got the plaintiff's mattress taken away from 8:00 a.m. to 8:00 p.m., leaving the plaintiff to either stand or sit on bare concrete and steel. Id. at 5-6.

The plaintiff wrote to medical, and they reapproved his mattress on June 14, 2014. Id. at 5. On June 16, 2014, however, Lt. Friend got the mattress canceled again; the plaintiff alleges this was out of retaliation. Id. Lt. Friend also told the plaintiff he reviewed his medical records, which the plaintiff believes was a HIPAA violation. Further, Lt. Friend told the plaintiff that he was medical and could override any medical prescription. Id.

The plaintiff saw Dr. Ortiz on July 1, 2014. Id. During that appointment, Nurse Bill stopped Dr. Ortiz from reissuing a double mattress accommodation or even allowing the plaintiff to have one mattress from 8:00 a.m. to 8:00 p.m. Id. at 6. Nurse Bill told Dr. Ortiz and the plaintiff that the decision would be reviewed. Nurse Bill also interfered with Dr. Ortiz's examination by trying to take over the examination and denying the plaintiff's right to be examined for all of his symptoms. Id. Ultimately, Dr. Ortiz disregarded the plaintiff's claims of a screw loose in his arm and pain in his lower back, left hip, both knees, and feet, as well as swelling in both legs and both feet. Dr. Ortiz changed his March

7

and April 2014 orders for staff to provide the plaintiff with an extra mattress to elevate his legs. Dr. Ortiz also determined it was medically sound for the plaintiff to go without a mattress at all for twelve hours a day. The plaintiff believes Dr. Ortiz made these decisions due to the influence of Nurse Jim and Lt. Friend. Id. at 5-6.

Finally, on July 3, 2014, Isferding allegedly conspired with Nurse Bill at med pass, saying that the plaintiff threw pills at Nurse Bill, and giving the plaintiff a twenty-four hour lockdown. Id. at 6. Isferding refused to give the plaintiff his indigent hygiene kit. When Isferding left at the end of his shift, the kit disappeared. This was days after the plaintiff had written up both Isferding and Nurse Bill for misconduct. Id.

  C. Legal Analysis of Alleged Facts

The plaintiff asserts a number of different claims against various defendants; the court will consider each in turn. The plaintiff's claims arise under the Fourteenth Amendment's due process clause because he was a pretrial detainee at the time. Budd v. Motley, 711 F.3d 840, 842 (7th Cir. 2013). Nevertheless, courts often uses Eighth Amendment case law as a guide in evaluating a pretrial detainee's due process claims. Id.

First, the plaintiff alleges that Hernandez issued two false disciplinary tickets against the plaintiff, and conspired with Isferding to lock the plaintiff up for no reason. Generally, issuing disciplinary tickets does not violate a plaintiff's rights, even if the plaintiff believes the disciplinary tickets to be false, as long as the plaintiff receives the required due process protections. See

8

Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir. 1984). Here, however, the court is concerned about whether the plaintiff received any process. According to the plaintiff, when Patrick J. Noonan came to his cell to talk to him about the disciplinary hearing, he was too sick to answer all of the questions he was asked. Because he did not answer all of the questions, he was given twenty days of discipline, without ever having received a hearing. The court concludes, based on these allegations, that the plaintiff may proceed against defendant Hernandez on Fourteenth Amendment claims regarding the false disciplinary tickets.

The court also concludes that the plaintiff may proceed on Fourteenth Amendment claims against Isferding and Hernandez for their harassment of the plaintiff. Liberally construing the plaintiff's complaint, Isferding conspired with Hernandez to lock the plaintiff in his cell for no reason, gave the plaintiff a contaminated food tray, put new food onto the contaminated tray, and refused to get the plaintiff medical attention when he became ill. Although some of these actions might not state a claim on their own, the totality of the circumstances suggests that these actions constituted sanctions—punishment—against the plaintiff, which Isferding and Hernandez imposed without providing the plaintiff any process.

Third, the plaintiff asserts that he has a right to not have his property taken, which Lt. Friend and Bellew violated on June 5, 2014, when they destroyed or threw away his property. To the extent that these defendants did destroy, or throw away, the plaintiff's property, presumably they did so in

9

Case 2:14-cv-00792-PP   Filed 09/22/15   Page 9 of 14   Document 10

violation of jail policy, and thus engaged in random and unauthorized conduct. "When a state official's conduct is random and unauthorized, due process requires only that an adequate post-deprivation remedy exists." Johnson v. Wallich, 578 F. App'x 601, 602 (7th Cir. 2014) (citations omitted). Wisconsin statutes afford tort remedies for those whose property has been converted or damaged due to "random, unauthorized deprivations of property by state officers and officials." Id. Because the plaintiff does not suggest that the loss of his property resulted from some established procedure or that Wisconsin's post-deprivation remedies were inadequate, he fails to state a due process claim for the loss of his property, and the court will not allow him to proceed on that claim.

Fourth, with regard to plaintiff's concerns about Lt. Friend reviewing his medical records, the plaintiff may not proceed on any claim under HIPAA because there is no private right of action under that statute. Carpenter v. Phillips, 419 F. App'x 658, 659 (7th Cir. 2011) (collecting cases).

The plaintiff makes a number of complaints about his double mattress accommodation. He names Dr. Ortiz, Lt. Friend, Nurse Jim, Nurse Bill and the medical secretary (Kelly). Dr. Ortiz originally authorized the plaintiff to have a double mattress due to physical issues. The plaintiff alleges, however, that there were a number of occasions on which that the accommodation was given and then taken away, or modified. This repeated provision, then deprivation, of the double mattress accommodation implicates both the plaintiff's right to adequate medical care (because the accommodation was for medical reasons)

10

and the plaintiff's conditions of confinement (he alleges that at times, he was left with no mattress for twelve hours a day).

Pretrial detainees are entitled to "adequate medical care," and "[o]fficials violate this duty if they 'display deliberate indifference to serious medical needs of prisoners.'" McGee v. Adams, 721 F.3d 474, 480 (7th Cir. 2013) (quoting Johnson v. Doughty, 433 F.3d 1001, 1010 (7th Cir. 2006)). Additionally, jail officials violate a pretrial detainee's rights "if they are deliberately indifferent to adverse conditions that deny 'the minimal civilized measure of life's necessities.'" Budd, 711 F.3d at 842 (quoting Farmer v. Brennan, 511 U.S. 825, 834, (1994)).

The court concludes that the plaintiff may proceed on Fourteenth Amendment medical care and conditions-of-confinement claims against Dr. Ortiz, Lt. Friend, Nurse Jim, and Nurse Bill. These claims relate both to the denial of the double mattress accommodation at times and the denial of mattresses entirely at other times. However, the plaintiff's factual allegations regarding Kelly, the medical secretary (that she approved the removal the plaintiff's extra mattress at Isferding's direction) are not enough sufficient to state a claim.

Finally, the court finds that the plaintiff may proceed on a retaliation claim against Isferding and Nurse Bill regarding the July 3, 2014 incident during med pass. To state a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and

11

(3) the First Amendment activity was at least a motivating factor in the [d]efendants' decision to take the retaliatory action." Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotations omitted). The plaintiff alleges that Isferding and Nurse Bill denied the plaintiff his hygiene kit just days after the plaintiff wrote both of them up for misconduct. These allegations are sufficient to state a retaliation claim.

### III.    CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2).

The court **DISMISSES** defendants Bellew and Kelly.

The court **ORDERS** that the plaintiff may proceed on Fourteenth Amendment claims against defendants Hernandez, Isferding, Dr. Ortiz, Lt. Friend, Nurse Bill and Nurse Jim. The court further **ORDERS** that the plaintiff may proceed on a First Amendment retaliation claim against defendants Isferding and Nurse Bill.

The court **ORDERS** that the United States Marshal shall serve a copy of the complaint and this order upon the following defendants pursuant to Federal Rule of Civil Procedure 4: **Hernandez, Isferding, Dr. Ortiz, Lt. Friend, Nurse Bill and Nurse Jim**. The court advises the plaintiff that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). Although Congress requires the court to order service by

12

the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

The court further **ORDERS** the defendants who are served to file a responsive pleading to the complaint.

The court further **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee to collect from the plaintiff's prison trust account the $350.00 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The Secretary or his designee shall be clearly identified the payments by the case name and number.

The court will send a copy of this order to the warden of the institution where the inmate is confined.

The court further **ORDERS** the plaintiff to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. Because each filing will be electronically scanned and entered on the docket upon receipt by the clerk, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff also should retain a personal copy of each document filed with the court.

The court further advises the plaintiff that failure to make a timely submission may result in the dismissal of this case for failure to prosecute.

In addition, the parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee this 22nd day of September, 2015.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge

14

Case 2:14-cv-00792-PP   Filed 09/22/15   Page 14 of 14   Document 10