UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TRAVIS DELANEY WILLIAMS,

          Plaintiff,

v.

DR. ORTIZ,
LT. BRADLEY FRIEND,
AUSTIN ISFERDING,
ROBERT HERNANDEZ,
WILLIAM COE, and
JAMES OLSTINSKE,

          Defendants.

Case No. 14-cv-792-pp

---

**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 55); DENYING PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 60); DENYING PLAINTIFF'S MOTION TO STAY (DKT. NO. 63); GRANTING DEFENDANTS' MOTION FOR SANCTIONS (DKT. NO. 65); GRANTING PLAINTIFF'S MOTION FOR SERVICE UNDER RULE 4 (DKT. NO. 69); GRANTING PLAINTIFF'S MOTION FOR EXTENSION OF DISCOVERY (DKT. NO. 70); DENYING PLAINTIFF'S MOTION FOR RELIEF AND TO STRIKE THE MAY 13, 2016 DEPOSITION (DKT. NO. 71); GRANTING DEFENDANTS' MOTION FOR EXTENSION OF TIME (DKT. NO. 73); GRANTING PLAINTIFF'S MOTION TO WITHDRAW EXHIBITS (DKT. NO. 77); DENYING PLAINTIFF'S MOTION TO AMEND AND SUPPLEMENT PLEADINGS (DKT. NO. 78); DENYING AS MOOT PLAINTIFF'S MOTION FOR PRIVACY PROTECTION (DKT. NO. 79); DENYING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER (DKT. NO. 81); DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 82); DENYING AS MOOT PLAINTIFF'S SECOND MOTION FOR SERVICE UNDER RULE 4 (DKT. NO. 90); DENYING PLAINTIFF'S THIRD MOTION TO APPOINT COUNSEL (DKT. NO. 91); DENYING PLAINTIFF'S MOTION TO CONSOLIDATE CASES (DKT. NO. 94); DENYING AS MOOT PLAINTIFF'S MOTION FOR JUDGMENT (DKT. NO. 95); DENYING PLAINTIFF'S MOTION TO FILE SUPPLEMENTAL COMPLAINT (DKT. NO. 101); DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO FILE EXCESS PAGES (DKT. NO. 102); DENYING PLAINTIFF'S MOTION TO ADD PARTIES (DKT. NO. 104); AND DEFERRING RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 110)**

---

In September 2015, this court screened the plaintiff's complaint. Dkt. No. 10. The court concluded that the plaintiff could proceed against six defendants (two of whom were, at the time, Doe defendants) on Fourteenth Amendment due process claims relating to a disciplinary complaint, alleged harassment, medical care and conditions of confinement. The court also ruled that the plaintiff could proceed against two defendants on a First Amendment retaliation claim. Id.

Five of the defendants answered the complaint. Dkt. Nos. 22 (William Coe); 26 (defendants Friend, Hernandez and Isferding); 47 (James Olstinske). The marshal's service mailed the summons and complaint to defendant Ortiz on October 9, 2015; defendant Ortiz had not returned that waiver by November 11, 2015. Dkt. No. 36. To date, defendant Ortiz has not answered the complaint.

On February 16, 2016, the court issued a scheduling order. Dkt. No. 50. It ordered the parties to complete all discovery by May 13, 2016. Dispositive motions were due June 14, 2016 (oppositions were due within thirty days). Id.

Since the court issued its scheduling order, this case has deteriorated considerably. That deterioration is due, in no small part, to the fact that that over the last ten months, the parties have filed twenty-one motions; the court has not ruled on one of them. The court's delay in ruling on these motions has created a cascade effect—had it ruled on the plaintiff's motion asking the court to serve a missing defendant, for example, all of the parties would have been joined to the suit by now. Had the court processed the defendants' motion for

sanctions, for example, its attention to that motion likely would have prevented a number of other motions from being filed. The responsibility for these delays lies with this court. While today's order does not repair the damage done in its entirety, the court hopes that it will assist in setting the case back on a forward path, and will prevent further damage from occurring.

## 1. PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 55)

On April 25, 2016—not quite three weeks before discovery was scheduled to close—the plaintiff filed a motion "asking the court to order & compel the defendants & their attorney to produce" a series of documents. Dkt. No. 55. The plaintiff indicated that he had personally mailed to the defendants "and their attorney" a discovery request three times. Id. The motion is three pages long, and lists certain classes of documents: all of the disciplinary reports written about him during a certain time period; all written complaints he'd submitted during that time period; all summaries of disciplinary hearings regarding the plaintiff—no time period specified; an "exact copy" of "the CHC medical contract that was in effect at the Racine County Jail" during the relevant time; all investigation reports during the relevant time; the RCJ's intake procedures and procedures for medical screening; classification procedures for the relevant time; all separation orders relating to him. Id. at 1-2. He then asks "for readable in their entirety 'inmate request for medical attention request filled out by the plaintiff indicating plaintiff's medical request and medical staff or security staff responses plaintiff ask for the following

request." Id. at 2. He then lists 93 dates, with notations after each date (which he indicated stood for "responded to" or "not responded to." Id. at 2-3.

Defendants Friend, Hernandez and Ortiz responded on May 10, 2016. Dkt. No. 57. They indicated that they hadn't received the plaintiff's requests until March 28, 2016, and that they'd served their response (including 598 pages of responsive documents) on April 27, 2016. Id. at 1-2. The defendants also pointed out that the plaintiff had failed to comply with the "meet-and-confer" requirements of Civil Local Rule 37, and noted that the court already had reminded the plaintiff once about this requirement. Id. at 2.

The defendants' response indicates that they have responded to the plaintiff's March 2016 discovery requests. The defendants also are correct that in its February 10, 2016 order, the court explained to the plaintiff that before he could file a motion to compel discovery, he had an obligation to meet and confer in good faith with the defendants. Dkt. No. 45 at 2. Sending the same discovery demand three times does not constitute meeting and conferring in good faith. While the plaintiff cannot pick up the phone and call defense counsel, he can write and ask if there is any additional information counsel needs, or whether counsel could explain to him why he had not received the documents he requested. The plaintiff presented no evidence that he had done that. The court will deny this motion.

## 2. PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 60)

The court received the defendants' response to the first motion to compel on May 10, 2016. Dkt. No. 57. On that same day, the court received a second

motion to compel from the plaintiff. Dkt. No. 60. In this one, he asked the court to order the defendants to produce a video from July 2, 2014, recording an hour that he was out of his cell. He also asked for the RCJ's employee rule book; psychological stress evaluation reports for defendants Hernandez, Isferding and Friend; employee discipline records for those three defendants and Carrie Bellows (whom the court dismissed from the lawsuit on September 22, 2015), William Coe and James Olstinske; and a print-out of the plaintiff's trust account during the relevant time. <u>Id.</u> at 1-3.

Friend, Hernandez and Isferding responded. Dkt. No. 61. While terse, the defendants' response implies that the plaintiff had not yet served these discovery demands on the defendants. <u>Id.</u> at 1 ("Insofar as Plaintiff actually intended to serve a request for production of documents pursuant to Fed. R. Civ. P. 34, Defendants will respond in accordance thereto.")

In this motion, the plaintiff did not indicate that he had served the defendants with these discovery requests. And again, he did not attach to the motion any certification that he had met and conferred in good faith with the defendants; in other words, he did not comply with Local Rule 37. Finally, the court received this motion on May 10, 2016—three days before the deadline for completing discovery, giving the defendants only three days to respond. The court will deny this motion.

3.    **PLAINTIFF'S MOTION TO STAY (DKT. NO. 63)**

The court received this motion from the plaintiff almost two weeks after the deadline for completing discovery had passed. Dkt. No. 63. In the last

couple of paragraphs of the motion, the plaintiff asked the court to stay all proceedings until it had ruled on the above two motions to compel. Id. But at the beginning of the motion, the plaintiff stated that the defendants were "slated to file a motion pertaining to a direct answer to a deposition question that was asked in bad faith." Id.

At that point, the court had not received any motions from the defendants about anything—depositions or otherwise. The court did not stay the proceedings at the time the plaintiff asked it to. The court generally does not "stay" proceedings unless there is something going on outside of the case— for example, a case pending in state court that must be resolved before the federal case can proceed—whose resolution might impact the federal case. The court *does* grant extensions of time for completing discovery and filing motions, when a party asks and there is good cause. The court will not grant the plaintiff's motion to stay proceedings, but it will address extending deadlines at the end of this order.

The court also notes that in the last sentence of his motion, the plaintiff stated that one of the motions he wanted the court to rule on was a "motion filed by plaintiff stating this case was agreed to be heard by a magistrate." Id. The plaintiff never filed such a motion. But the record does show that *he* consented to a magistrate judge hearing this case. What it does not show is whether all of the *defendants* have consented.

After the plaintiff filed his complaint, he filed a completed "Consent to Proceed Before a U.S. Magistrate Judge." Dkt. No. 6. At that time, the assigned

magistrate judge was Judge Aaron E. Goodstein. The plaintiff refused to consent to Judge Goodstein hearing his case. Id. For that reason, the case was assigned to a district court judge—Judge Rudolph T. Randa. The case was reassigned to Judge Pepper on December 29, 2014, after she was appointed to the district court. Months later, in September 2015, Judge Goodstein went on recall status (a sort of semi-retirement), and all of the cases to which he'd been assigned were assigned to other magistrate judges. The plaintiff's case was assigned to Judge Nancy Joseph. Under this district's policy, the clerk's office sent out new consent forms to the parties who'd appeared. Dkt. No. 11.

This time, the plaintiff consented to Judge Joseph hearing the case. Dkt. No. 13. After defendants Friend, Hernandez, and Isferding were served, they, too, consented to Judge Joseph hearing the case; their attorney, Attorney Lanzdorf, signed off on the consent. Dkt. No. 19. Despite the fact that the docket indicates that the clerk's office sent William Coe and James Olstinske consent forms on September 24, 2015 (dkt. no. 12), neither of those defendants (represented by Attorney Elmer) has ever filed a consent form.

The consent form instructs parties that, whether they do or don't consent, they must file the form within twenty-one days of the date that they receive it. It is not clear when Coe and Olstinske received their consent forms, but Coe must have received his before November 4, 2015 (the date he filed his answer), and Olstinske must have received his by at least February 11, 2016 (the date he filed his answer). The twenty-one-day filing deadline stated in the consent form has long passed for both of these defendants.

What happens when a defendant does not follow the directions in the consent form, and does not file the consent form on time? The clerk's office often sends a reminder to that party. Sometimes that doesn't happen—sometimes, particularly in cases involving more than one defendant, and cases involving defendants who are served later in a case, that letter does not go out. It didn't in this case. The court does not have a policy of "punishing" a defendant who fails to file a consent form on time, or who fails to file it at all. Instead, if a party does not file the consent form at all, the court assumes—as it must, given the requirements of Article III of the Constitution and 28 U.S.C. §636—that the party who didn't respond does not consent.

The clerk's office cannot transfer a case from a district judge to a magistrate judge without the express consent of all of the parties. See 28 U.S.C. §636(c)(1). Because Coe and Olstinske have not consented to Judge Joseph hearing the case, the case remains with Judge Pepper.

**4.      DEFENDANTS' MOTION FOR SANCTIONS (DKT. NO. 65)**

The court received the above motion to stay on May 24, 2015—eleven days after the deadline for the close of discovery. It also appears that the court received the motion eleven days after counsel for the defendants conducted the plaintiff's deposition.

The plaintiff already had hinted, in the above motion to stay, that there had been problems with the deposition, and that he expected the defendants to file a motion. The defendants did file that motion, in the form of a motion for sanctions. Dkt. No. 65. The motion seeks dismissal of the plaintiff's case. In the

alternative, it seeks money damages, an order compelling the plaintiff to answer questions, and an extension of the dispositive motions deadline. Id. at 1.

A. The Pleadings

i. *The Defendants' Brief*

In their supporting brief, the defendants explain that on April 27, 2016, they served notice of the deposition, scheduled for May 13, 2016. Dkt. No. 66 at 2. On that date, Attorneys Lanzdorf and Elmer, along with a court reporter, appeared at Columbia Correctional Institution for the scheduled deposition. Id. The plaintiff attended the deposition without security restraints, and there were no correctional facility staff in the deposition room. The plaintiff sat at the head of the table; counsel sat on one side, the court reporter on the other, each "approximately four feet away from Plaintiff." Id. After the plaintiff acknowledged that counsel could enquire as to "anything reasonably calculated to lead to the discovery of relevant information," id., counsel began to ask a series of questions regarding which of the defendants actually found the plaintiff guilty of an infraction that led to his being disciplined, id. at 3. In particular, counsel asked the plaintiff whether it was defendant Isferding, or defendant Hernandez, who "actually made the finding of guilt that resulted in imposition of discipline?" Id. at 3. The plaintiff responded, "The answer again, the writer was Hernandez. He recommends the days. If you're found guilty, them the days you're going to get." Counsel responded, "Does the person who makes the finding of guilt—Is the person who makes the finding of guilt the

same person who makes the recommendation of discipline?" At this point, the plaintiff responded that he had answered the question already, and that he objected. Counsel and the plaintiff went back and forth, with the plaintiff continuing to object to the question. Counsel finally noted the objection, but stated—contrary to the plaintiff's comment that "we can move on to something else"—that he was not going to move on until the plaintiff gave him a clear answer to the question. <u>Id.</u> at 3-4.

At this point, counsel indicates, the plaintiff became "hostile and confrontational." <u>Id.</u> at 4. Counsel states that the plaintiff leaned toward counsel "aggressively" and demanded to know what counsel meant by saying he wasn't going to move on. When counsel continued to try to frame the question, the plaintiff stated, "Mr. Lanzdorf, this is a maximum security prison. You better move on, man." <u>Id.</u> Counsel stated that he understood the plaintiff's remark to constitute a threat, and suggested a break (noting the court reporter moving away from the plaintiff). Counsel asked for a member of the institution staff to come in; when the staff member came into the room, the plaintiff stated, "I don't care who you call. If we call staff, it's over with, man." <u>Id.</u> Counsel indicates that at that point, he did not feel safe continuing the deposition, or even trying to call the court for a ruling. <u>Id.</u>

A higher-ranking security officer came into the room, and counsel explained what had happened and that he believed the plaintiff's statements were threatening. <u>Id.</u> at 5. The plaintiff did not deny that his statements were threatening. The institution staff was not able to locate a telephone, and so

counsel eventually decided to continue with the deposition, and to try to call the court after it concluded. Id. Counsel indicates that, as the security staff left the room, the plaintiff said something to the effect of "this is a waste of time," or "this is not important." Id. The following exchange then occurred:

> COUNSEL:     I'm going to ask that she read back the last pending question before we go on, but I would just state for the record that while – while we were on a break you stated to – to staff here at the prison here that this, referring to this deposition, is not important. Is it your position that this lawsuit is not important?
>
> PLAINTIFF:     The lawsuit is important, but, I mean, I mean, this is a hassle man. Don't you know, I got, ooh, man, psychological issues, man. You press the wrong button, man, too, man, you really don't want to do that, man.
>
> COUNSEL:     Why don't I want to do that?
>
> PLAINTIFF:     I mean, I keep telling you, when I tell you to leave stuff alone, man, leave it alone. I'm not properly medicated. I won't be responsible, man. I've asked you actually the best I know how to leave it alone, man.

Id.

Concluding that continuing to try to clarify the plaintiff's answer would make matters worse, counsel moved on, and completed the deposition without getting the clarifying information. Id. Counsel indicates that he

> deliberately steered clear from certain legitimate lines of inquiry that, but for Plaintiff's threats, he would have otherwise pursued because he believed them likely to provoke further threats or violent actions from the Plaintiff, including, but not limited to, Plaintiff's full disciplinary record and history of confrontations with staff at the Racine County Jail.

Id. at 6. Before leaving the deposition—and with institution staff present—counsel called the court's chambers to ask the court to address the issues described above. The court's staff indicated to counsel that Judge Pepper was not available to receive the call. Id. (In fact, Judge Pepper was in Chicago on personal business on May 13, 2016, and was not available to take calls that day.) Counsel indicates that the court reporter appeared shaken, stated that she'd never seen anything like this during a prison deposition, and that if the plaintiff had made another threatening statement, she would have left. Id. Counsel indicates that he himself has conducted over thirty inmate depositions, some at supermax facilities, and has never been threatened or made to feel that his or anyone else's safety was at risk. Id. Counsel believes that the plaintiff deliberately threatened him with violence. He indicates that he spent nine hours working on the deposition (including prep time, travel and conducting the deposition itself), and also would be receiving an invoice for the cost of obtaining the deposition transcript. Id.

The defendants ask the court to impose the sanction of dismissal. Id. at 7-8. They argue that such a harsh sanction is warranted by the plaintiff's litigiousness (not only in this case, but in a number of other cases he has filed); his ignoring of the court's warnings (such as its warning that he could not file a motion to compel without first meeting and conferring with counsel, or the court's warning in one of the plaintiff's other cases that responding to correspondence or motions with threats could result in sanctions); and the need to deter the kind of threatening conduct in which the plaintiff engaged at

the deposition. Id. at 8-10. The defendants argue that if the court does not feel it appropriate to dismiss the case, the court should require the plaintiff to pay the costs and fees that the defendants have incurred in conducting the deposition, require the plaintiff to respond (in writing) to the questions they did not pose (or did not get clear answers to) at the deposition, and extend the deadline for filing dispositive motions. Id. at 10.

ii.     *The Plaintiff's Response*

The plaintiff objected to the defendants' motion. Dkt. No. 75. He first points out that in its February 16, 2016 scheduling order, the court advised the parties that if the defendants wanted to depose the plaintiff, they had to serve all parties with notice at least fourteen days before the deposition. Id. at 1; see Dkt. No. 50 (scheduling order) at 1, ¶1. The plaintiff argues that counsel did not provide that fourteen-day notice, and he refers the court to an attachment to a motion he filed after the defendants filed their motion for sanctions.

At Dkt. No. 71-1, in connection with a motion to stay proceedings and strike the deposition in its entirety, the plaintiff attached a "Visitor Notification" form. The document is "from" someone named "J. Haldeman," and it's addressed to "LOBBY." In the "date notified" box, it shows the date "5/6/16." Id. at 1. It indicates that the date of the visit will be May 13, 2016, the time will be 12:45 p.m., and the purpose of the visit is "Professional Visit-Deposition for WILLIAMS, TRAVIS . . . ." Id. The form indicates that when the visitors (listed

as Attorneys Lanzdorf and Elmer and court reporter Peterson) arrived, "J. Haldeman" was to be contacted. Id.

The plaintiff reads this form to indicate that counsel did not notify Columbia Correctional staff about the May 13, 2016 deposition until May 6, 2016—seven days beforehand. He argues that this meant he had little time to have someone help him review his complaint (and indicates that someone else wrote the complaint for him). Dkt. No. 75 at 1. He alleges that counsel's statement that counsel sent the deposition notice on April 27, 2016 was not true, and that the plaintiff wasn't notified until nine days later. Id. He takes issue with various details in the defendants' motion—he argues that the deposition room wasn't small, that there was no need for him to be in restraints for the deposition, that he was not four feet away from the lawyers and the court reporter, that he did not acknowledge that counsel could ask him questions about anything reasonably calculated to lead to discovery of relevant information. Id. at 2.

He argues that counsel asked questions designed to annoy, harass and bully him into giving answers that would favor the defendants. He indicates that the exchanges the defendants quoted in their motion came after he'd already been asked about forty questions, and that the quotes do not show his full words. Id. He expresses frustration at the fact that counsel refused to move on after the plaintiff objected to the "who determined guilt" question four times. Id. He indicates that counsel left out a discussion of how counsel tried to get staff attention by waving his arm at a surveillance camera, and he indicates

that he—the plaintiff—asked for higher-ranking staff to come in because he'd lodged numerous complaints about the first officer to respond. Id.

The plaintiff raises many other issues, but the court particularly notes the following:

> 1.) Plaintiff further stated to Captain Keller [the officer of higher rank] that this is a court proceeding so you can't instruct me to do anything. 2.) Plaintiff further stated to Captain Keller review the camera and see the fact that this man's changed his posture and leaned forward while demanding I answer a question, Captain this attorney tried to intimidate me by his actions, this is a maximum security prison Captain I am surrounded by much tougher people than him that's what I'm trying to explain.

Id. at 3. The plaintiff also alleges that the excerpts of the deposition which counsel quoted are "tailored." Id. He asserted that he's never 'had a attorney just inquire away telling him he's not moving on to the next question." Id. at 4.

### iii. *The Defendants' Reply*

The defendants replied. Dkt. No. 84. They reiterate that they served notice of the deposition on April 27, 2016, and attach the notice of deposition. Dkt. No. 85-3. That notice is dated April 27, 2016 and the certificate of service indicates that it was served by U.S. mail, postage paid, on the same date. Id. They note that even if they hadn't served the notice fourteen days prior to the deposition, the remedy for the plaintiff would have been to move for a protective order pursuant to Fed. R. Civ. P. 26(c)(1)(B). Id. at 84. In response to the plaintiff's allegation that the defendants misquoted the deposition transcript, the defendants have provided the court with the full transcript, as well as a video. Dkt. No. 84 at 1; Dkt. No. 85-4 (transcript); Dkt. No. 88 (video). Finally,

the defendants argue that the plaintiff has continued to be obstreperous, pointing out that when they sent the plaintiff a video he'd requested, the plaintiff responded with a letter, saying he'd sent the entire packet back unopened. Dkt. No. 84 at 3.

    B.    <u>The Court's Analysis</u>

        i.    *The Rules Governing Depositions*

The court begins by looking at Fed. R. Civ. P. 30, which governs oral depositions. Rule 30(d)(2) states, "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on any person who impedes, delays, or frustrates the fair examination of the deponent." The question the court must answer is whether the plaintiff "impeded, delayed or frustrated" a "fair" deposition. Fed. R. Civ. P. 26(b) says that parties may obtain

> discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

So the scope of discovery is broad. This means that a lawyer conducting a deposition may ask about any issue that is relevant to a party's claim or defense. There are several ways that a party can collect that information— through oral depositions (Fed. R. Civ. P. 30), through written interrogatories (Rule 33), through requests for production of documents (Rule 34), and through requests for admissions (Rule 36).

Fed. R. Civ. P. 30(c)(2) states that if a party who is being deposed objects to a question (for example, on the ground that it isn't relevant to his claim), the court reporter must note the objection, "but the examination still proceeds; the testimony is taken subject to any objection." The rule also states that if a party does have an objection to a question, the objection "must be stated concisely in a nonargumentative and nonsuggestive manner." The only grounds for not answering a question in a deposition are "to preserve a privilege, to enforce a limitation ordered by the court, or" to make a motion "to terminate or limit [the deposition] on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Id., Fed. R. Civ. P. 30(d)(3)(A).

So a party who is being deposed may not simply refuse to answer questions. The person may note, for the record, that he objects to a question, and the court reporter has to record that objection. But he still has to answer the question, unless it falls into one of the categories in Rule 30(d)(3)(A).

ii.    *The Fairness of the May 13, 2016 Deposition*

The deposition began at 12:38 p.m. on May 13. Dkt. No. 85-4 at 1. At the outset, Attorney Lanzdorf attempted to explain the standard deposition rules to the plaintiff. Id. at 3-5. The plaintiff, however, expressed impatience with this, stating, "We can get down to business, though. You can save the formalities." Id. at 5. When the plaintiff indicated that he was in pain, Attorney Lanzdorf enquired whether the pain was so bad that the plaintiff couldn't participate meaningfully in the deposition. Before counsel could finish the question,

however, the plaintiff interrupted, saying, "No. I'm in such degree of pain, I wish you just – let's get to the meat of this and get it over with and you can hit the highway, I can go back and do what I do best." <u>Id.</u> at 6.

The following exchange occurred next:

> COUNSEL: All right. I'm going to try to do this as quickly as possible. Just another background thing. I may ask you a question that you don't feel comfortable answering, that you don't think is bearing on the incidents that are the subject of this lawsuit.
>
> That said, if you feel uncomfortable answering a question you can tell me why, you can state your objection for the record, but this being a deposition, I'm giving – I've given broad leeway in the scope of questions that I can ask you.
>
> And so the rules of a deposition are very different than the rules of a court. In a court proceeding lawyers can only ask questions and expect to receive an answer to those questions if it's directly relevant to that proceeding. In a deposition it's a little bit broader. It's anything that's reasonably calculated to lead to the discovery of information that's relevant.
>
> So if we need to, if there's a question that you don't feel comfortable answering, you can make that record clear, but if you're refusing to answer a question, then at that stage we'll contact the Judge and the Judge can make a ruling, okay?
>
> PLAINTIFF: Yes, yes, yes.

Dkt. No. 85-4 at 6-7. At this point, Attorney Lanzdorf began to ask substantive questions.

The plaintiff refused to answer a number of questions during the deposition. When Attorney Lanzdorf inquired about how many times the plaintiff had been convicted, the plaintiff responded, "I object to that. You got Internet. You can look it up, research it. We ain't going to talk about it. Move

on to the next question." Id. at 10. When Attorney Lanzdorf asked about the plaintiff's current sentence, the plaintiff responded, "I wouldn't even know. Don't care." When counsel started to ask the next question, the plaintiff did not let him finish, stating, "I don't know and don't care. That was my answer." Id. at 11. When Attorney Lanzdorf began to ask questions about one of the other cases the plaintiff has pending before the court, and the plaintiff refused to answer those questions. Id. at 14-15.

Although the plaintiff was refusing to answer questions (in violation of Rule 30(d), Attorney Lanzdorf behaved professionally. At one point, Attorney Lanzdorf asked a question, and the plaintiff responded that he believed counsel had mixed up some facts; Attorney Lanzdorf responded, "And that may very well be," acknowledging that he might have confused a fact. Id. at 27. At another point, when Attorney Lanzdorf attempted to determine what discovery the plaintiff had, the plaintiff responded that anything he had, he'd filed with the court. Counsel responded, "All right. Thank you." Id. at 31. On another occasion, the plaintiff was answering a question, and Attorney Lanzdorf, apparently concerned that the plaintiff may have misunderstood the date he was asking about, said, "Just to guide you, and I'm sorry to interrupt, but what I'm referring to is the June 5, 2014 incident related to the food tray." Id. at 37-38. There are extensive passages where the plaintiff gave long answers to questions, and counsel did not interrupt. Counsel waited until the plaintiff had finished his answers before going on to the next question. On the few occasions that Attorney Lanzdorf did interrupt to clarify an issue, he apologized each

time. The transcript shows that Attorney Lanzdorf's conduct, rather than being badgering and harassing, was professional and polite.

The plaintiff, on the other hand, at times reacted to Attorney Lanzdorf's questions in an argumentative fashion (in violation of Rule 30). When Attorney Lanzdorf asked the plaintiff whether he had a particular document, the plaintiff again responded that anything he had he'd filed with the court. Counsel told the plaintiff that he hadn't seen that particular document among the ones the plaintiff had filed with the court. The plaintiff responded, "Okay then. File whatever you got to do when you go back to your hut appropriately." Id. at 35. The plaintiff appears to have become agitated at this point—in answer to the next few questions, the plaintiff said things like, "You just told me you had exhibits, right? You don't see the affidavit from Dan Burns." When counsel answered, "Okay," the plaintiff repeated, "Do you see the affidavit from Dan Burns?" As counsel tried to explain what he was asking, the plaintiff interjected, "Come on." Id.

The exchange that gave rise to the defendants' motion for sanctions occurred fifty-one pages into the eight-six-page deposition transcript. It began with counsel asking the plaintiff who imposed discipline against him for the incident with the food tray. Id. at 51. Counsel specifically asked, "Who imposed the discipline against you? Who made the ultimate finding of guilt?" The plaintiff responded, "I believe it was – No, it was Noonan, Patrick Noonan, because –" Counsel asked, "Did Defendants Hernandez and/or Isferding impose discipline against you?" The plaintiff responded, "They made a

recommendation and Noonan followed it." After counsel acknowledged that answer with an "okay," the plaintiff added, "They recommend what you should have. Say, for instance, you write a disciplinary report. They say well, I recommend three days, and you can either accept it or go to the hearing. If you get found guilty, you're going to get the three days plus just for having a hearing." <u>Id.</u> Attorney Lanzdorf attempted to clarify: "The question for you is did Isferding or Hernandez actually make the finding of guilty that resulted in imposition of discipline?" The plaintiff responded, "The answer again, the writer was Hernandez. He recommends the days. If you're found guilty, them the days you're going to get." <u>Id.</u> Counsel tried again to focus the question on the identity of the person who actually imposed the punishment: "Does the person who makes the finding of guilt – Is the person who makes the finding of guilt the same person who makes the recommendation of discipline?" <u>Id.</u> at 51-52.

The plaintiff began objecting, arguing that he'd already answered the question, and eventually telling counsel that he'd better move on, because "this is a maximum security prison." <u>Id.</u> at 51-52. Counsel stated that they needed to take a break because counsel felt threatened, and ended up stating, "I think we need to take a break here. I think we need to call in staff just to, you know, take a breather before we go on, okay?" <u>Id.</u> at 53. In response to this statement, the plaintiff said, "I don't care who you call. If we call staff, it's all over with, man. You can go get your court order or whatever. It's over with." <u>Id.</u> After a member of the security staff came in, and indicated that he was calling for a "white shirt" (a corrections officer), Attorney Lanzdorf stated, "Let me just state

I'm not trying to get Mr. Williams in any sort of trouble here. What I'm trying to get is an answer to a question." Id. at 54.

The plaintiff then said, apparently speaking to CCI staff member:

> THE WITNESS:    That I'm not going to answer. I object to it. He started pressing the issue, Captain. I asked him to leave the question alone. This is a maximum security prison, counsel. I'm here for a reason, man. Quit pressing me, man. That's all I told him. Leave me alone. Leave the question alone.
>
> I objected to it. This is a court proceeding. I objected to it. You're not going to get an answer to it, not the way you want to do it. You try to lead me into something that I'm not going to answer it the way you want me to answer. That's the bottom line.

Id. at 54.

At this point, counsel asked the staff if there was a way for him to contact the court for a ruling. Id. at 55. While the parties waited to find out if they could call the court, counsel picked up the deposition with other questions. Id. at 56. The questioning continued until page 59, at which time the parties went off the record for a discussion. When they returned to the record, they had the exchange in which counsel asked the plaintiff if he thought the lawsuit was important, and the plaintiff warned counsel not to press the wrong buttons. Id. at 59-60.

While the deposition continued from this point without any other major incidents, the plaintiff was, at times, disrespectful toward Attorney Lanzdorf. The plaintiff stated that Attorney Lanzdorf talked too much, id. at 70, and toward the end of the deposition, the plaintiff started asking questions of counsel. When Attorney Lanzdorf finished his portion of the questioning, the

plaintiff said, "Thank God." Id. at 75. Attorney Lanzdorf then indicated that there might be some additional questions once the court had ruled on the question that caused the problem back at page 51, and the plaintiff responded, "Oh, man. Put it in interrogatories or something, man, and mail it to me." Id. at 75-76. Attorney Elmer asked some questions, and when he announced that he was finished, the plaintiff stated to Attorney Lanzdorf, "Wow. Take a hint from that guy." Id. at 83. At this point, the parties placed a call to the court. The deposition transcript indicates, "No Judge available." Id. at 84. The deposition ended at 2:36 p.m. Id.

The transcript demonstrates that Attorney Lanzdorf followed the procedures laid out in Rule 30. It also shows that he behaved professionally and courteously toward the plaintiff, even when the plaintiff refused to answer questions, or reacted in a rude or argumentative fashion. The only behavior to which the plaintiff can point in support of his argument that the deposition was not fair, or was conducted in bad faith, is the fact that he believes that Attorney Lanzdorf continued to repeatedly ask the plaintiff a question the plaintiff already had answered, after the plaintiff told Attorney Lanzdorf to "move on."

The court's review of the transcript leads it to believe that the plaintiff's belief that he was being repeatedly asked the same question was the result of his misunderstanding of Attorney Lanzdorf's questions.

Corrections officers (or, the court supposes, other institution staff) can write up an inmate for an alleged disciplinary infraction. It sounds, from what

the plaintiff told Attorney Lanzdorf at the deposition, like the person who writes up the disciplinary ticket also may recommend, in that ticket, what the person thinks the punishment for that infraction should be. If the inmate doesn't agree with the ticket, or with the proposed punishment, the inmate may ask for a hearing. If the inmate asks for a hearing, someone else—a hearing examiner—decides whether the inmate should be punished, and whether he should receive the punishment the ticket writer suggested.

The plaintiff told Attorney Lanzdorf a few times that Hernandez and Isferding had written tickets against him (which he believes were false or unwarranted). After hearing that, Attorney Lanzdorf asked the plaintiff who actually decided that the plaintiff was guilty of those infractions, and who decided how much time he should serve for them. Attorney Lanzdorf's question assumed that although Hernandez and Isferding wrote the disciplinary tickets, there was someone else at RCJ who actually decided whether the plaintiff was guilty on those tickets, and who decided what his punishment should be.

The plaintiff first answered that he thought it might have been someone named Patrick Noonan. (Patrick Noonan is not a defendant in this case, although the plaintiff has sued him in Williams v. Leslie, 14-cv-452; the complaint in that case indicates that Noonan was a classification officer at RCJ.) Attorney Lanzdorf followed up by asking the plaintiff whether either Hernandez or Isferding had been the ones who actually decided the plaintiff's guilt and imposed the final, twenty-day sanction on him.

It appears from the plaintiff's response that the plaintiff was trying to explain that in his opinion, once a corrections officer like Hernandez writes up an inmate and recommends a sanction, the people higher up on the inmate complaint food chain—complaint examiners, hearing officers, etc.—just follow that recommendation, no matter what. In the plaintiff's opinion (the court thinks), whoever writes the ticket is the person who causes the ultimate sanction, because if the person hadn't written the ticket and recommended a punishment, the ultimate decision maker would not have found the inmate guilty and given the punishment.

Attorney Lanzdorf, however, wasn't asking the plaintiff who *caused* the plaintiff to end up being sanctioned. He was trying to ask the plaintiff the name of the person in the inmate complaint system who had actually made the finding of guilt and imposed the twenty-day sanction for the incident involving the food tray. This was a valid question for Attorney Lanzdorf to ask, given that the plaintiff argued in the complaint that someone gave him a sanction without first giving him a disciplinary hearing. The complaint indicates that Hernandez and Isferding wrote reports, and that Noonan came to the plaintiff's cell while he was sick to ask him about a disciplinary hearing. Dkt. No. 1 at 3-4. It also states that the next thing the plaintiff knew, he was in segregation for confusing to comply with a disciplinary hearing and was given twenty days in segregation without a hearing. Id. at 4. The complaint does not say who gave the order to send the plaintiff to segregation, or who ordered that he be in segregation for twenty days. Nor does it say who made the decision not to give

the plaintiff a disciplinary hearing. That is what Attorney Lanzdorf was trying to find out, and the plaintiff—as of this date—never has answered that question (or several other questions Attorney Lanzdorf asked during the deposition).

The court believes, construing the transcript in the light most favorable to the plaintiff, that the plaintiff did not understand Attorney Lanzdorf's specific question. Because the plaintiff believed that the person who wrote the ticket was the person ultimately responsible for the sanction, and because he'd told Attorney Lanzdorf who wrote the tickets, he concluded that Attorney Lanzdorf was asking the same question (who wrote the tickets) over and over and over, "pressing the issue," as he told the institution staff. He argues that because Attorney Lanzdorf continued to ask him the same question after the plaintiff told him to "move on," Attorney Lanzdorf repeated the question only to annoy the plaintiff. In fact, Attorney Lanzdorf was asking a different question than the one the plaintiff had answered, and the plaintiff refused to answer that different question.

Attorney Lanzdorf's attempts to get an answer to his question did not demonstrate bad faith, nor did they violate Rule 30. In fact, they complied with Rule 30(d)'s mandate that a party may object to a question for the record, but still must answer the question, subject to a judge's later ruling. The hearing was fair.

The deposition transcript indicates that the plaintiff was annoyed. But it indicates, as discussed above, that the plaintiff was annoyed almost from the

outset of the deposition. Rule 30(d)(3)(A) does not allow a deponent to refuse to answer a question because he is annoyed. It allows a deponent to move to stop the deposition because it is being conducted in a way that "unreasonably annoys, embarrasses, or oppresses" the deponent. Attorney Lanzdorf's questions were reasonable and appropriate, and the transcript does not support the plaintiff's position that Attorney Lanzdorf was asking the questions only to try to annoy him.

### iii. *Whether the Plaintiff Impeded, Obstructed or Delayed the Deposition*

A court may impose sanctions under Rule 30(d)(2) where a deponent "impedes, delays, or frustrates" the fair deposition. To impede something is to obstruct or hinder it. To delay something is, of course, to slow it down. And to frustrate something is to defeat its purpose. The plaintiff's behavior at the deposition did impede, delay and frustrate the deposition.

The transcript shows that from the outset of the May 13, 2016 deposition, the plaintiff was impatient. He told Attorney Lanzdorf to skip the preliminaries (although Attorney Lanzdorf was complying with the rules by going through them). He frequently refused to answer questions, in violation of Rule 30(c)(2). He made derogatory comments to Attorney Lanzdorf.

More relevant to this motion, the court finds that the plaintiff did threaten Attorney Lanzdorf. The plaintiff first told Attorney Lanzdorf that he'd "better move on." He didn't say, "Please move on," or "I think we should just move on." He said, "Man, you better move on, man." Dkt. No. 85-1 at 52. When Attorney Lanzdorf tried to explain his specific question, the plaintiff said, "Mr.

Lanzdorf, this is a maximum security prison. You better move on, man." Id. The plaintiff was implying to Attorney Lanzdorf that Attorney Lanzdorf was in a place that housed people who had done dangerous things, and for that reason, Attorney Lanzdorf had "better" do as the plaintiff told him.

If the plaintiff's intent wasn't clear in that statement, it became clear once the security officer came into the deposition room. Attorney Lanzdorf explained to the security officer that he had been asking a question, and that the plaintiff "made a remark that he's not going to answer the question, this is a maximum security prison, I need to move on to another question, inferring that – what I took to be a threat that . . . ." Id. at 53. The security officer, without letting Attorney Lanzdorf finish, asked, "You want me to get a White Shirt up here?" Attorney Lanzdorf said that he thought someone should come up. Id. It is not clear whether the white shirt arrived before or after the next exchange, but Attorney Lanzdorf explained to someone that he wasn't trying to get the plaintiff in trouble. Id. at 54. The plaintiff then told someone whom he referred to as "Captain" that he was not going to answer Attorney Lanzdorf's question. He stated, "He started pressing the issue, Captain. I asked him to leave the question alone. This is a maximum security prison, counsel. I'm here for a reason, man. Quit pressing me, man. That's all I told him." Id.

Through this explanation, the plaintiff confirmed that the reason he told Attorney Lanzdorf that CCI was a maximum security prison was because he was trying to make Attorney Lanzdorf stop "pressing him." The plaintiff's statement that he was "here for a reason" implied that Attorney Lanzdorf had

better do what the plaintiff said—stop pressing him—because the plaintiff had done something that had caused him to end up classified to a maximum security facility.

The plaintiff made another threat after Attorney Lanzdorf asked him about his comment that the case wasn't important. The plaintiff told Attorney Lanzdorf that he had psychological issues, and said, "You press the wrong button, man, woo, man, you really don't want to do that, man." Id. at 59. When Attorney Lanzdorf asked why he wouldn't want to do that, the plaintiff said, "I mean, I keep telling you, when I tell you to leave stuff alone, man, leave it alone. I'm not properly medicated. I won't be responsible, man." Id. at 60. Again, the plaintiff was telling Attorney Lanzdorf that if Attorney Lanzdorf did not do what the plaintiff asked—leave him alone—the plaintiff would do something for which he could not be responsible.

Threatening an attorney during a deposition violates Rule 30. The plaintiff's threats impeded the deposition. They delayed the deposition—both by causing Attorney Lanzdorf to stop the deposition and consult with institution staff, and by causing him to finish the deposition without asking all of the questions he needed to ask. It frustrated the deposition by keeping Attorney Lanzdorf from obtaining all of the discovery that he had a right to seek. The plaintiff's behavior during the May 13, 2016 deposition provides grounds for the court to impose sanctions under Rule 30(d).

iv.    *The Appropriate Sanction*

The defendants have asked the court to dismiss the plaintiff's case as a sanction for his behavior. They acknowledge that dismissal is a severe sanction, but argue that it is warranted by the plaintiff's extraordinary behavior of threatening Attorney Lanzdorf, by his filing of multiple cases, and by the many motions (some without basis) that he files in those cases. They argue that the court must deter the plaintiff from these behaviors, and that the only way to deter him is to dismiss his case.

The court understands that the plaintiff is under stress. He is in prison, a place that he does not want to be. He has numerous medical conditions (some of which are the subject of allegations in this case), which cause him to be in pain. He indicates that he has psychological health issues. In another motion in this case, he notes that he has only a sixth-grade education. He cannot afford to hire a lawyer to represent him. He filed this lawsuit because he feels that the defendants have wronged him. And this court has delayed his entire case (and his other cases), by failing to rule on his motions in a timely manner. That combination of factors can understandably cause a person to become frustrated.

These frustrations, however, are no excuse for the plaintiff to threaten Attorney Lanzdorf (or anyone else). The plaintiff chose to utilize the court system to bring his claims, as is his right. But if he wishes to continue to use the court system, he must follow the rules of that court system. He must answer questions posed to him at depositions. He must follow this court's

orders. He must not, no matter how frustrated he may become, threaten anyone—not in letters, not at depositions, not in motions. The court sees many cases filed by inmates—a third of the court's docket consists of cases filed by inmates. The majority of those plaintiffs are not highly educated and don't have legal training. Many have serious medical issues. Many have psychological issues. Those plaintiffs are frustrated, and in pain, and under stress. But they do not threaten people.

The court is not going to dismiss the plaintiff's case, even though it agrees with the defendants that it has grounds to do so under Rule 30(d) and the case law the defendants cite. The court is going to give the plaintiff one more opportunity to show that he can conduct this litigation reasonably and appropriately. Nor is the court going to order the plaintiff to pay the costs counsel has accrued in preparing for the deposition—not because the court does not think that request is warranted (it is), but because the plaintiff does not have the funds to pay such costs. (He has filed a motion to proceed *in forma pauperis* in every case he has filed.)

The court is going to order that the plaintiff answer, in writing, the questions that he refused to answer at the May 13, 2016 deposition, as well as any questions that Attorney Lanzdorf did not ask as a result of the plaintiff's behavior. The plaintiff must answer Attorney Lanzdorf's written questions thoroughly and honestly. To be very clear: if the plaintiff refuses to answer any of the written questions Attorney Lanzdorf asks, or leaves any of the questions blank, or answers any of the questions rudely or disrespectfully, the court will

allow the defendants to renew their motion asking the court to dismiss the plaintiff's case as a sanction. The court is leaving it up to the plaintiff; if he cooperates in answering Attorney Lanzdorf's written questions, he may proceed with this case. If he does not, the court will have no other choice but to dismiss.

The court also will extend the deadline for completing discovery, to allow Attorney Lanzdorf to obtain the answers to these questions, and will extend the deadline for filing dispositive motions.

## 5. PLAINTIFF'S MOTION FOR SERVICE UNDER RULE 4 (DKT. NO. 69)

This motion relates to Dr. Ortiz—whom, as the court has noted, has not been served with the complaint. Dkt. No. 69. The plaintiff indicates that he has become aware that Dr. Ortiz *was* served in another lawsuit, filed by a plaintiff named David Thomas. Thus, the plaintiff asks the court to issue an order requiring the marshal to serve Dr. Ortiz. Id.

The court has run a query in the case management and electronic case filing database, and found <u>David Thomas v. Jacobson, *et al.*</u>, Case No. 15-cv-633-JPS. Indeed, as the plaintiff indicates, Mr. Thomas sued Dr. Ortiz. He also sued Correctional Healthcare Companies, Inc. Attorneys Steven T. Elmer and W. Patrick Sullivan subsequently filed notices of appearance on behalf of Correctional Health Care Companies. (15-cv-633, Dkt. No. 33). They also filed notices of appearance on behalf of Dr. Simeon Ortiz. (15-cv-633, Dkt. No. 36). Dr. Ortiz answered the complaint in Mr. Thomas' case. (15-cv-633, Dkt. No. 37).

The court cannot tell, from looking at the Thomas docket and pleadings, the address at which the marshals served either Correctional Healthcare or Dr. Ortiz. The court can tell, however, from looking at the docket in *this* case, that the marshals tried to serve Dr. Ortiz at the wrong address.

On September 24, 2015, the clerk's office issued blank process and receipt forms to the marshals service for the defendants in this case. Dkt. No. 12. The blank form the clerk's office prepared for Dr. Ortiz listed his address as "Racine County Jail – 717 Wisconsin Avenue, Racine, WI 53403." Id. On December 10, 2015, the clerk's office transmitted to the marshals another blank process and receipt form for Dr. Ortiz. Dkt. No. 29. This new form listed Dr. Ortiz's address as "unknown, was working at the Racine County Jail, 717 Wisconsin Ave, Racine, WI 53403." Id. On December 31, 2015, the clerk's office docketed the Process Receipt and Return that the marshals filed for Dr. Ortiz. Dkt. No. 36. That form was the *first* form the clerk's office had provided—the one that listed Dr. Ortiz's address as "Racine County Jail—717 Wisconsin Ave, Racine, WI 53403." Id. The court does not know whether the marshals service did not receive the second form the clerk's office provided. Regardless, the completed form that the marshals filed on December 31, 2015 indicates that the marshals mailed the summons/complaint package to Dr. Ortiz at the Racine County Jail. The problem is that Dr. Ortiz is not an employee of the Racine County Jail.

In his (second amended) complaint, Mr. Thomas alleged that Correctional Health Care Companies ("CHC") provided health care to RCJ inmates, and that

Dr. Ortiz was employed by CHC. <u>Thomas v. Jacobson, *et al.*</u>, Case No. 15-cv-633 at Dkt. No. 19, p. 2. As of April 11, 2016, Attorney Steven T. Elmer had appeared in the <u>Thomas</u> case on behalf of Correctional Health Care, and on May 19, 2016, he appeared on behalf of Dr. Ortiz. Case No. 15-cv-633 at Dkt. Nos. 33, 36. Attorney Elmer has appeared in this case, as well—he represents defendants William Coe and James Olstinske—and he filed his first notice of appearance in this case on November 4, 2015 (dkt. no. 21)—five months *before* he answered on behalf of Dr. Ortiz in the <u>Thomas</u> case.

The court cannot find, in the docket for either case, an address for Dr. Ortiz. Nor does it know whether he remains employed by CHC. The court assumes, however, that counsel for defendants Coe and Olstinske may have that information, or may know where to obtain it. The court will require counsel for those defendants to provide the court with that information by a date certain, so that it may ensure that defendant Ortiz is served with the summons and complaint in this case. The court will grant this motion.

## 6. PLAINTIFF'S MOTION FOR EXTENSION OF DISCOVERY (DKT. NO. 70)

This motion—which the plaintiff dated ten days after the discovery deadline expired, and which the court received ten days after that—asks the court to extend the deadline for completing discovery. Dkt. No. 70. The plaintiff lists documents that he has been "denied," or that the defendants have not disclosed. He also indicates that on May 13, 2016 (the deposition date), "defense attorney Michael J. Lanzdorf refused to discuss these records or the fact that he serves documents that's redacted but refuse to redact the plaintiffs

D.O.B., and driver license number." Id. The plaintiff asked the court to extend the deadline for completing discovery until it had ruled on his motions to compel.

The court will grant this motion, for various reasons discussed throughout this order.

### 7. PLAINTIFF'S MOTION FOR RELIEF AND TO STRIKE THE MAY 13, 2016 DEPOSITION (DKT. NO. 71)

The same day the court received the above motion to stay from the plaintiff, it also received a document entitled "Motion for Relief Federal Rules Civil Procedure 12 & 60." Dkt. No. 71. The plaintiff asks the court to "strike" the May 13, 2016 deposition. In support of this request, the plaintiff reiterates that he did not know he was going to be deposed until May 9th, which didn't give him time to review the complaint. He states that Attorney Lanzdorf is financially invested in the case, and should be disqualified under Fed. R. Civ. P. 28(c). He argues that counsel conducted the deposition in bad faith, badgering him and making aggressive gestures. He argues that counsel went off the record several times and made false accusations against him, alleging that he threatened counsel. Id. at 1. He also alleges that counsel overheard a private conversation the plaintiff was having with a psychologist, and then incorporated that into a line of questioning. Id. at 2. Finally, he asks the court to rule on this motion before any others, and to stay proceedings until it rules on this motion. Id.

The court assumes that when the plaintiff asks the court to "strike" the deposition, he means that he wants the court to prohibit the defendants from

using the deposition against him in any way in the case. The court will not grant this relief, and will deny the motion.

A.    Notice

The court first addresses the plaintiff's notice argument. The scheduling order the court issued in February 2016 states: "The court advises the parties that, pursuant to Rule 30(a) of the Federal Rules of Civil Procedure, the defendants may depose the plaintiff and any other witness confined in a prison upon condition that, at least fourteen days before such a deposition, the defendants serve all parties with the notice required by the rule." Dkt. No. 50 at 1. Fed. R. Civ. P. 30(a) says that if a deponent is in prison, the person seeking to conduct a deposition must obtain leave of court; the language in the February 2016 scheduling order provides that leave. Fed. R. Civ. P. 30(b)(1) describes what the notice must contain—the time and place of the deposition, and the deponent's name and address.

The defendants provided the notice of deposition that they prepared. Dkt. No. 85-3. The notice contains, as required by Rule 30(b)(1), the date and time for the deposition (May 13, 2016 at 12:45 p.m.), the location of the deposition (Columbia Correctional Institution, 2925 Columbia Drive, P.O. Box 950, Portage, WI 53901-0950), and the name of the person being deposed (Travis Delaney Williams). Id. at 1. Attorney Lanzdorf signed the notice on April 27, 2016, and certified that he placed the notice in the mail on that same date. Id. at 2.

April 27, 2016 was sixteen days before the May 13, 2016 deposition date. The plaintiff argues, however, that the "Columbia Corr. Inst. staff" did not find out about the deposition until "on or about May 7," and that this did not give him time to review the complaint that someone else had prepared for him. Dkt. No. 75 at 1. In support of this argument, he provided the court with a "Visitor Notification" form. The document is "from" someone named "J. Haldeman," and it is addressed to "LOBBY." In the "date notified" box, it shows the date "5/6/16." Dkt. No. 71-1 at 1. It indicates that the date of the visit will be May 13, 2016, the time will be 12:45 p.m., and the purpose of the visit is "Professional Visit-Deposition for WILLIAMS, TRAVIS . . . ." <u>Id.</u> The form indicates that when the visitors (listed as Attorneys Lanzdorf and Elmer and court reporter Peterson) arrived, "J. Haldeman" was to be contacted. <u>Id.</u>

Based on the information in the Visitor Notification Form, the plaintiff argues that Attorney Lanzdorf did not comply with the scheduling order's requirement that Lanzdorf serve the deposition notice at least fourteen days before the deposition. This argument misunderstands the definition of the word "serve" in the scheduling order, and in the Federal Rules of Civil Procedure.

Rule 5 of the Federal Rules of Civil Procedure governs "Serving and Filing Pleadings and Other Papers." Rule 5(b) lists the acceptable ways for "serving" papers. Among those acceptable ways is Rule 5(b)(2)(C): "mailing [the paper] to the person's last known address—*in which event service is complete upon mailing.*" (Emphasis added.) So—under Rule 5, when a party services a notice by mail, the service is complete at the time that the party puts the notice in the

mail. Attorney Lanzdorf put the notice in the mail on April 27, 2016, sixteen days before the May 13, 2016 deposition. He complied with the scheduling order's requirement that he "serve" the notice at least fourteen days before the deposition.

It likely took a while for the notice to reach CCI. Attorney Lanzdorf's office is in Racine; CCI is 132 miles away, in Portage. In these days of reduced budgets for the U.S. Postal Service, mail doesn't always move as swiftly as we would like. It is also likely that, once the notice arrived in Portage, and was delivered to CCI, it took a while for the *plaintiff* to receive the notice. The plaintiff likely is more aware than anyone else that mail to and from prisons is slowed by the prison processing system and by its security requirements. CCI would have had to process the piece of mail through its security system. Then CCI would have had to route the mail to the various people in CCI who would need to be aware of the information in the notice—people like, apparently, "J. Haldeman," a staff member who must have had some responsibility for helping get the visitors to the deposition room.

The visitor form lists the "date notified" as May 6, 2016. It does not state that May 6, 2016 was the date on which CCI was notified that visitors would be coming. In fact, it doesn't say who was "notified" on May 6. All it indicates is that someone was "notified" on May 6, 2016 that visitors would be coming for a deposition. It is possible that the CCI staff received the deposition notice well before May 6, 2016, and that for whatever reason, they did not notify "J. Haldeman" until May 6. The plaintiff assumes that, because he didn't find out

about the deposition until somewhere around May 9, the prison must not have known about it until a week before. The court does not know, one way or the other, whether that was true.

Regardless of when the plaintiff learned of the deposition, however, neither the scheduling order nor Rule 5 requires the deposing party to send the notice in time for it to be *received* at least fourteen days ahead of the deposition. The scheduling order requires only that the deposing party *serve* the notice at least fourteen days ahead of the deposition—and the evidence demonstrates that Attorney Lanzdorf complied with that requirement by placing the notice in the mail sixteen days ahead of the deposition.

B.     Inadequate Time to Prepare

Perhaps the issue the plaintiff is more concerned about is the fact that, as he asserts several times, he didn't find out about the deposition in time to review his complaint thoroughly, and he needed to do that because someone else prepared the complaint for him. The court understands the need to prepare for a deposition. But even if the plaintiff did not find out about the deposition until May 9, he does not explain why he could not, between May 9 and May 13, 2016, read the four pages of his seven-page complaint that laid out the allegations in the case.

C.     Financial Conflict of Attorney Lanzdorf

The plaintiff next alleges—with no evidence or proof or argument to support the allegation—that Attorney Lanzdorf is "financially invested" in the case and thus should be disqualified. Because the plaintiff provides nothing to

support this claim, the court will not grant the motion on this basis. (The court also notes that Attorney Lanzdorf is an assistant corporation counsel for the County of Racine. He is, in essence, the "law firm" for the County of Racine; he works for the government. His job is to represent the county in any legal proceedings. He is paid by the county to do that job, regardless of whether he wins cases or loses cases or settles cases. He does not make less money if the county loses a case, nor does he have to pay the award if a plaintiff wins; he does not get a bonus if he wins a case. It is not clear to the court how Attorney Lanzdorf could be "financially invested" in the plaintiff's case. This is the kind of unsupported allegation that the court will not tolerate in the future.

D.      Bad Faith Behavior by Attorney Lanzdorf

Finally, the plaintiff argues that the court should strike the deposition because Attorney Lanzdorf proceeded in bad faith, badgered him, went off the record to accuse him of misconduct, and asked him a question based on something Attorney Lanzdorf had overheard him say to a psychologist. As the court discussed in detail above in ruling on the defendants' motion for sanctions, the court has reviewed the transcript of the deposition, and it does not support the plaintiff's contentions.

The court notes that the plaintiff has urged the court to look carefully at the deposition, because he believes that someone tampered with it. The court has reviewed the deposition transcript numerous times in writing this order. The court cannot find anything indicating that anyone has tampered with the transcript. There is nothing to indicate that pages are missing. None of the

40

pages appear to have had lines, or words, "whited out" and replaced. The entire transcript is consistent in appearance, typeface and word flow.

E.    Conclusion

Attorney Lanzdorf complied with the scheduling order in terms of giving notice of the deposition. The plaintiff has not explained why he could not prepare for the deposition. There is no evidence that Attorney Lanzdorf has a financial stake in the case. The deposition transcript shows that Attorney Lanzdorf followed the rules for conducting depositions, did not act in bad faith, and did not question the plaintiff in a manner that would unreasonably annoy the plaintiff. For these reasons, the court denies the plaintiff's motion to strike the deposition.

8.    **DEFENDANTS' MOTION FOR EXTENSION OF TIME (DKT. NO. 73)**

As the court has discussed above, its original scheduling order set a deadline of June 14, 2016 by which the parties should file summary judgment motions. Dkt. No. 50.

On that day, defendants William Coe and James Olstinske filed a motion asking the court to extend the deadline for filing dispositive motions. Dkt. No. 73. They pointed out the fact that is a running theme in this order—that there were several motions pending before the court, and that the court's decision on one or more of those motions might either obviate the need for dispositive motions, or impact the substances of those motions. They asked the court to extend the deadline for them to file dispositive motions until after the court had ruled on, specifically, their motion for sanctions. Id.

The court will grant this motion. The court will, as explained at the end of the order, reset several deadlines in the case.

**9.      PLAINTIFF'S MOTION TO WITHDRAW EXHIBITS (DKT. NO. 77)**

In this motion, the plaintiff asks the court to order the clerk's office to return to him the exhibits that he attached to a "response" he filed to one of the answers to the complaint. Dkt. No. 77. Specifically, he indicates that he responded to William Coe and James Olstinske's answers to the complaint, and that he attached exhibits to that response. He wants them back, because the court told him that it was too early in the litigation to file supporting evidence. Id.

The plaintiff did file a response to William Coe's answer, dkt. no. 25, and he did attach a one-page exhibit, dkt. no. 25-1. The court will grant this motion, and order the clerk's office to return that one-page document (a copy of an inmate request form dated July 3, 2014) to the plaintiff. The plaintiff did not file a response to James Olstinske's answer (the answer is docketed at Dkt. No. 47). He *did* file a response to the answer filed by Friend, Hernandez and Isferding. Dkt. No. 30. He attached forty-two pages of exhibits to that response. Dkt. No. 30-2. On the assumption that these are the exhibits that the plaintiff wants back, the court will order the clerk's office to return those forty-two pages of exhibits, as well.

**10.     PLAINTIFF'S MOTION TO AMEND AND SUPPLEMENT PLEADINGS (DKT. NO. 78)**

This motion asks the court to allow the plaintiff to amend his motion to strike the deposition and to stay proceedings (dkt. no. 71, discussed above).

42

Dkt. No. 78. He argues that "that motion should be deemed moot," because this court's staff told Attorney Lanzdorf what to do and what to file and what all other parties should do, and that "Michael Lanzdorf did not do this." Dkt. No. 78. He also states that "[i]t further stated that in light of what was instructed by telephone," the plaintiff had filed a motion "accordingly to what was instructed by Judges Pamela Peppers secretary/clerk," but that Attorney Lanzdorf had included "extra pleadings beside what was instructed that needs responding to," and therefore that the plaintiff was asking the court to "deem the motion identified within this motion as moot and accept the following attached motion and declaration." Id.

The court *believes*, although it is not certain, that the plaintiff is asking the court to deem his Motion for Relief Federal Rules Civil Procedure 12 & 60, dkt. no. 71, moot. But that motion—received by the court on June 2, 2016— makes no reference to instructions from Judge Pepper's staff, or any instructions. The court cannot find, in any of the motions the plaintiff has filed up to this point, any reference to instructions from Judge Pepper's staff; the court is not clear on what the plaintiff means by those references. Finally, the plaintiff did not attach to this motion a new motion and declaration, although the motion asks the court to accept "the following attached motion and declaration."

Because the court does not understand this motion or its basis, and because the court already has ruled on the motion at dkt. no. 71, the court will deny the motion without prejudice.

**11. PLAINTIFF'S MOTION FOR PRIVACY PROTECTION (DKT. NO. 79)**

This motion asks the court to redact the plaintiff's Social Security number, driver's license number and home street address from any documents they file in this case. Dkt. No. 79. He also asks the court to direct defense counsel to redact such information from any future filings, because it is private information. Id.

The court will deny this motion. To date, the defendants have not filed any documents with the court that contain any of the information the plaintiff describes. (The plaintiff asked Attorney Lanzdorf, during the May 13 deposition, not to send *the plaintiff* any documents containing his Social Security number or address, although he did not explain why.) If, in the future, the defendants do file documents with the court, the court presumes that defense counsel are aware of the requirements of the E-Government Act (reflected on the court's web site at http://www.wied.uscourts.gov/e-filing/redaction-requirements-e-government-act), mandating that they must redact the names of minors (and use only the minor's initials); Social Security numbers (although they are allowed to leave the last four digits of the number on documents filed with the court); dates of birth (although they may leave on the documents the year of birth); and financial account numbers (although again, they may leave the last four digits of the account number on the document). The E-Government Act prohibits parties from listing home addresses on electronically-filed documents only in criminal cases. This is not

a criminal case; it is a civil lawsuit. Therefore, there is no prohibition on filing documents with home addresses on them.

Because the defendants are under a legal obligation to redact from electronically-filed documents the information described above, the court will deny this motion as moot.

## 12. PLAINTIFF'S MOTION FOR PROTECTIVE ORDER (DKT. NO. 81)

The plaintiff alleges that Columbia Correctional Institution, where is he housed, is not allowing him to have compact discs sent to him by defense counsel in this case and defense counsel in <u>Williams v. Stauchie</u>, 14-cv-1078. Dkt. No. 81. He alleges that the institution is keeping discovery from him, thus denying him access to the courts, and asks the court to issue an order preventing the CCI staff from destroying or rejecting CDs from opposing counsel in his cases. <u>Id.</u>

CCI is not a defendant in this lawsuit. Therefore, the court does not have jurisdiction over CCI, and cannot order staff members at CCI to do things, or to stop doing things. The court notes two things, however. First, the plaintiff seems to be objecting to the fact that CCI staff will not let him keep the CDs with him in his cell. There is no law that the court is aware of that requires prison staff to let an inmate keep certain items with the inmate in that inmate's cell. The issue is whether the plaintiff has some access to the CDs—whether, if he asks and makes appropriate arrangements, the CCI staff will allow him to view the CDs. Second, the plaintiff has not presented the court with any proof

(or arguments) that the CCI staff did, in fact, destroy the CDs he received from the opposing counsel in his cases.

Institution staff do have an obligation to allow inmates to have access to legal materials they need for cases they have filed. The court suggests that the plaintiff make a specific request to set up a time, date and place where he can view the CDs opposing counsel have provided. But the court cannot order the CCI staff to let the plaintiff keep the CDs with him, or order them to do anything else, because they are not parties to this case. The court will deny this motion.

13.    **PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 82)**

In this motion to appoint counsel (not his first), the plaintiff alleges that he needs a lawyer because the law librarian won't give him effective access to the law library. Dkt. No. 82. There are several components to his motion. First, he indicates that he is entitled to extra time in the law library, to "confer with persons knowledgeable in civil law." Id. He wants the court to order the librarians to give him an extra five hours per week in the law library until this case is over. Id. at 2. He also argues that the law librarians miscalculate "deadline dates." Id. at 1. While it is not entirely clear, it appears that the plaintiff is arguing that one of the librarians calculates dates by looking at the date on which an order was signed, while the plaintiff believes that the librarian ought to calculate due dates from the date the plaintiff actually receives the order. Id. at 2. Finally, he indicates that it takes fourteen days to get copies (even if he has money in his account), and he isn't allowed to use his

legal loan money to buy cases. Id.at 1-2. For all of these reasons, he indicates that he cannot get access to the law library unless the court appoints counsel to represent him. Id. at 2.

Again, the court does not have the authority to issue orders to CCI staff, because CCI is not a party to this case. The court, again, notes several things for the plaintiff's benefit. The plaintiff does not allege that CCI has denied him all access to the law library. He alleges only that he doesn't have enough time in the library. The Supreme Court has indicated that federal courts should not be involved in the "day-to-day management of prisons." Sandin v. Conner, 515 U.S. 472, 482-83 (1995). Rather, the Court has held, courts ought to defer to the flexibility that prisons need "in the fine-tuning of the ordinary incidents of prison life." Id. How much time an institution allows an inmate to spend in the library is one of the "ordinary incidents of prison life" which the Supreme Court has advised courts to leave to the discretion of the prison. If the plaintiff needs more time to respond to a court deadline because of limited library time, he can file a motion and ask the court to give him that extra time.

The same is true for the amount of time it takes for the plaintiff to obtain copies, or the institution's policy on how many cases he may order and from what accounts. These are prison policy issues. If the plaintiff needs more time because the institution has been slow in providing him copies, or because he has to look at cases in books rather than getting copies of them, he may file a motion asking for that additional time.

As to the calculation of deadlines: to the extent that this court issues orders setting deadlines, the orders usually explain how the parties should calculate the deadlines. For example, in the court's February 16, 2016 scheduling order, the court indicated that "[a] party opposing a motion for summary judgment must file a response 'within 30 days of service of the motion.'" Dkt. No. 50 at 1 (quoting Civil L.R. 56(b)(2)). As the court explained above, Fed. R. Civ. P. 5 governs service, and it indicates that if a party serves something by mail, it is "served" on the date it is mailed. So the thirty days starts to run from the date the document is put in the mail. Parties may always ask for additional time to respond, if the mail takes too long to arrive. Sometimes an order will require a party to take certain action "within thirty days of the date of this motion." In that case, the thirty days starts to run from the date the judge signed the order. If the librarians disagree with the plaintiff on what an order says, and because of that disagreement, will not give him the library time he thinks he needs, the plaintiff may, as the court has already said, file a motion asking for more time.

The court will not appoint counsel for the plaintiff based on his assertion that he does not get enough library time. The plaintiff has filed many motions, and for the most part, the court has been able to understand those motions. The plaintiff has laid out his claims and arguments in a way that shows the court that he is capable of making his own case. If the time comes that the court no longer believes that to be true, the court will reconsider its decision.

14. **PLAINTIFF'S SECOND MOTION FOR SERVICE UNDER RULE 4 (DKT. NO. 90)**

The plaintiff repeats in this motion the request he made in his first motion for service under Rule 4 (dkt. no. 69). Dkt. No. 90. As the court indicated above, it is going to require counsel for defendants Coe and Olstinske to provide any information he has about an appropriate service address for Dr. Ortiz, and then will order the marshals to serve Dr. Ortiz at that address. The court will deny this second motion as moot.

15. **PLAINTIFF'S THIRD MOTION TO APPOINT COUNSEL (DKT. NO. 91)**

In this third motion to appoint counsel, the plaintiff states only that he seeks counsel "based on motion newly found July 2016 newly submitted motions late." Dkt. No. 91. He also relies on the arguments he presented in his second motion to appoint counsel (dkt. no. 82).

For the reasons stated in its ruling at number 13 above, the court denies this motion.

16. **PLAINTIFF'S MOTION TO CONSOLIDATE CASES (DKT. NO. 94)**

The plaintiff has a number of cases pending before the court. The following seven cases are open:

Williams v. Leslie, 14-cv-452-pp;

Williams v. Ortiz (the case at bar), 14-cv-792-pp;

Williams v. Stauchie, 14-cv-1078-pp;

Williams v. Swenson, 14-cv-1594-pp;

Williams v. Mikutis, 16-cv-1318-pp;

Williams v. Mikutis, 16-cv-1319-pp; and

<u>Williams v. Becker</u>, 16-cv-1320-pp

The plaintiff asks the court to consolidate the current case with <u>Williams v. Leslie</u>, 14-cv-452. Dkt. No. 94. He makes this request to avoid duplicative efforts in related cases and to promote judicial efficiency and economy. <u>Id.</u> at 1. He points out that in another case—<u>Williams v. Stauchie</u>, 14-cv-1078—the summary judgment motion has been fully briefed since October of 2016, and the court has not yet ruled. He also argued that that case should have been consolidated with <u>Williams v. Swenson</u>, 14-cv-1594. <u>Id.</u> at 2.

The plaintiff is correct that Fed. R. Civ. P. 42 governs consolidation. That rule specifies that if "actions before the court involve a common question of law or fact," the court may consolidate the cases (or join all matters at issue for hearing or trial, or issue other orders to avoid unnecessary cost or delay). The two cases the plaintiff asks this court to consolidate, however, do not involve common questions of law or fact, and consolidation is not appropriate.

In <u>Williams v. Leslie</u>, 14-cv-452, the plaintiff is proceeding against eleven defendants on claims that they provided him with inadequate medical care or accommodations (or no medical care) between his arrest on May 8, 2013 and about April 2014, and that certain of the defendants knew others failed to provide him medical care but did nothing about it. Case No. 14-cv-452, Dkt. No. 29. That case is at the summary judgment stage. (Again, the plaintiff has filed a number of motions in that case since September of 2016, upon which the court has not ruled.) In this case, the plaintiff is proceeding against six defendants on claims that in June and July of 2014, the defendants wrote false

disciplinary tickets about him, harassed him, denied him mattresses that were medically required, and retaliated against him for an incident that occurred on July 3, 2014. Case No. 14-cv-792, Dkt. No. 10.

The only defendant named in both of these cases is defendant Friend, and the plaintiff brings different allegations against him in the two cases. The timeframes involved in the two cases are different. The claims asserted against the defendants in each case are different. The only common fact shared between the two cases is the fact that the events the plaintiff alleges took place in the same place—the RCJ. That is not a sufficiently common question of law or fact to allow for consolidation.

The court understands that the plaintiff is distressed about the time it has taken the court to rule on motions in his many cases. Hard though it may be to believe, consolidating unrelated cases will not speed up that process— indeed, it would slow it down, precisely because the cases are not sufficiently related to justify consolidation. The court is working hard to remedy its delays in all of the plaintiff's cases; that is the solution to the delay problem, not consolidation.

The court will deny this motion.

## 17. PLAINTIFF'S MOTION FOR JUDGMENT (DKT. NO. 95)

The plaintiff asks the court to reject the defendants' motion for sanction (dkt. no. 65, discussed above), and to issue judgment in his favor as a matter of law. Dkt. No. 95. In reality, this is the plaintiff's motion asking the court to

rule on the motion for sanctions. Because the court is now ruling, through this order, on the motion for sanctions, it will deny this motion as moot.

## 18. PLAINTIFF'S MOTION TO FILE SUPPLEMENTAL COMPLAINT (DKT. NO. 101)

Almost two and a half years after he filed his original complaint, the plaintiff asks the court to allow him to supplement the complaint by adding claims against new defendants. Dkt. No. 101. Along with this motion, he filed a proposed supplemental complaint, alleging that in October 2016, another inmate discovered that two individuals (whom the plaintiff identifies as "sergeants," conspired to lock the plaintiff in his cell without a due process hearing on several occasions. Dkt. No. 101-1.

While the court has become somewhat familiar with the plaintiff's handwriting over the course of his cases, the court finds it difficult to read some portions of the proposed supplemental complaint. It appears, though, that the plaintiff alleges that one of the proposed defendants (a Sgt. Todd Laver) stated that the plaintiff failed to "set up a hearing," and that a June 8, 2014 hearing was "canceled and [the plaintiff] immediately found guilty because of this." Dkt. No. 101-1 at 1. The plaintiff alleges that Laver was the hearing officer at a June 15, 2014 hearing, and at that hearing, the plaintiff received nine days of disciplinary segregation. Id. The plaintiff alleges that a "disciplinary report"—by whom, or from where, he does not say—showed that Laver was the hearing officer "condoning Officer Hernandez actions of sanctioning [the plaintiff] 9 days for disciplinary infractions." Id. at 2. He then states that "the same generated disciplinary report hearing summary" stated,

an hour and twelve seconds later, that "no one was the hearing officer for the identical report" mentioned earlier. Id. He alleges that proposed defendant Sgt. Melissa Moran "condoned" Hernandez and Isferding's "actions of taking [the plaintiff's] hour out;" that Hernandez called her "and informed her of his & Isferding actions she condones & don't give [the plaintiff] notice . . . ." Id. He alleges that both proposed defendants "condoned" other disciplinary actions by Hernandez.

The plaintiff asks the court to allow him to supplement his complaint under Fed. R. Civ. P. 15(d). Dkt. No. 101. Rule 15(d) says that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened *after the date of the pleading to be supplemented*." The "pleading" the plaintiff wants to "supplement" is his original complaint, filed July 8, 2014. Dkt. No. 1. The events he describes in his proposed supplemental complaint occurred in June 2014—*before* he filed his original complaint. The plaintiff cannot use Rule 15(d) to supplement his complaint with allegations of events that occurred before he filed the complaint.

Perhaps what the plaintiff meant to ask was for the court to grant him leave to *amend* his complaint under Rule 15(a)(2). The court may grant a plaintiff leave to file an amended complaint if "justice so requires." Here, the court does not find that justice so requires. The court is not entirely clear on what it is that the plaintiff believes that Laver and Moran did, but he uses the word "condones" a lot. He appears to be alleging that Hernandez and Isferding

took actions against him, that those actions were somehow wrong, and that Laver and Moran "condoned" the wrongful actions. He appears to believe that someone tampered with a disciplinary hearing report, and that Laver "condoned" that action.

The Merriam-Webster dictionary defines "condone" as a transitive verb that means "to regard or treat (something bad or blameworthy) as acceptable, forgivable or harmless." In other words, the plaintiff alleges that Laver and Moran knew that Hernandez and Isferding did something bad, and treated it as acceptable. But he does not support that claim by anything other than the assertion that on October 14, 2016, another inmate found "evidence" in the discovery that the plaintiff has.

The plaintiff has had discovery for quite some time—since April or May of 2016. His argument that another person found information in that discovery some six months later, and his request to be allowed to use that as a basis for amending the complaint, is untimely. Further, the plaintiff does not clearly explain what evidence demonstrates that either Laver or Moran had any knowledge of any wrongdoing by Hernandez and Isferding (if, in fact, they did anything wrong). "In order for a hearing examiner to be constitutionally liable for adjudging an inmate guilty based on false evidence, the examiner has to know that the evidence was false. An examiner 'is not required to believe the prisoner in every instance or face liability for violating the prisoner's constitutional rights.'" Larry v. Meisner, Case No. 16-cv-1108, 2016 WL

5390882, *4 (E.D. Wis., Sept. 27, 2016) (citing <u>Wilson v. Greetan</u>, 571 F. Supp. 2d 948, 955 (W.D. Wis. 2007)).

Finally, one cannot prove liability under §1983 simply by demonstrating that a proposed defendant was aware that someone else did something wrong. "[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'" <u>Minix v. Canarecci</u>, 597 F.3d 824, 833 (7th Cir. 2010) (quoting <u>Palmer v. Marion Cnty</u>, 327 F.3d 588, 594 (7th Cir. 2003). The plaintiff has not alleged any person involvement on the part of Laver or Moran in any constitutional violation.

The court will deny this motion.

## 19. PLAINTIFF'S MOTION FOR LEAVE TO FILE EXCESS PAGES (DKT. NO. 102)

The plaintiff asks the court to grant him leave to file an oversized brief, due to the large number of exhibits in this case & 80 plus pages of deposition transcripts." Dkt. No. 102. He cites Civil Local Rule 56 in support of this request, so the court assumes that he seeks leave to file an oversized summary judgment brief.

The court will deny this motion as moot. First, Civil L. R. 56(b)(8) limits a party's principal *brief*—the party's explanation of the facts, and the citations of law—to thirty pages. Thirty pages is, in all but the most complicated cases, sufficient for a party to explain why there are no genuine disputes as to issues of material facts, and why the law requires the court to grant judgment in his favor. If a party wants to file *exhibits*, those exhibits are filed separately from the thirty-page (or less) principle brief. Second, the court now has seen the

plaintiff's motion for summary judgment, dkt. no. 110, and his brief, dkt. no. 111. The plaintiff did not file an oversized brief. His brief is thirteen pages long—seventeen pages *under* the thirty-page limit prescribed by Civil L.R. 56. Because the plaintiff didn't file an oversized brief, the court will deny this motion as moot.

## 20.    PLAINTIFF'S MOTION TO ADD PARTIES (DKT. NO. 104)

This motion asks the court to allow him to join Sgt. Todd Laver and Sgt. Melissa Moran as defendants. Dkt. No. 104. For the reasons discussed in the court's ruling on the plaintiff's motion to file a supplemental complaint (dkt. no. 101), the court will deny this motion.

## 21.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 110)

The plaintiff has filed a one-page motion for summary judgment (dkt. no. 110), accompanied by a thirteen-page brief (dkt. no. 111) and sixty-six pages of exhibits (dkt. no. 111-1), as well as an affidavit (dkt. no. 112) and proposed findings of fact (dkt. no. 113).

As the court has discussed above, its original scheduling order set a deadline of June 14, 2016 by which the parties should file summary judgment motions. Dkt. No. 50. That deadline has passed, and while defendants Coe and Olstinske have asked the court to extend it, the plaintiff has not. But the court has now acknowledged several times that its own inaction has caused uncertainty and confusion for all of the parties in this case, including the plaintiff. The court will not dismiss, or strike, the plaintiff's motion for

summary judgment simply because he did not ask for an extension of the June 14, 2016 deadline.

The court has, however, issued an order suspending briefing on the plaintiff's motion. Dkt. No. 117 (order dated February 2, 2017). Under the scheduling order, the defendants' response to the plaintiff's motion (received and docketed by the court on January 23, 2017, and thus "served" on the defendants on that date) would be due February 22, 2017. But it makes no sense to require the defendants to respond to the plaintiff's motion until the parties have received the court's rulings on the above orders, until any further discovery is completed, and until the court sets new dispositive motions deadlines. Once all of these things have happened, the court will set a new deadline by which the plaintiff may either amend his motion for summary judgment or file a new one, and a new deadline by which the defendants must respond.

### CONCLUSION

The court **DENIES** the plaintiff's motion to compel. Dkt. No. 55). The court **DENIES** the plaintiff's motion to compel. Dkt. No. 60.

The court **DENIES** the plaintiff's motion to stay. Dkt. No. 63.

The court **GRANTS** the defendants' motion for sanctions, to the extent that it finds that the plaintiff engaged in behavior that impeded, delayed, and frustrated a fair deposition. Dkt. No. 65. As a sanction, the court **ORDERS** that Attorney Lanzdorf may submit to the plaintiff, in writing, any questions that the plaintiff refused to answer during the May 13, 2016 deposition, as well as

any questions that Attorney Lanzdorf did not ask due to the plaintiff's threatening behavior. The court further **ORDERS** that if the plaintiff fails to answer these questions fully and respectfully, the defendants may renew their request that the court impose the sanction of dismissal.

The court **GRANTS** the plaintiff's motion for service under Rule 4. Dkt. No. 69. The court **ORDERS** that, on or before the end of the day on **February 24, 2017**, counsel for defendants Coe and Olstinske shall notify the court, by filing a notice under seal, of the address information counsel has for Dr. Simeon Ortiz, or of the fact that he does not have, and has not been able to obtain, that information. If, in the alternative, counsel is authorized to accept service for Dr. Ortiz, counsel may notify the court of that fact, and the court will direct the marshal's service to serve counsel.

The court **GRANTS** the plaintiff's motion for extension of the March 13, 2016 discovery deadline. Dkt. No. 70. The court **ORDERS** that the deadline for the parties to complete all discovery is **EXTENDED** to the end of the day on **April 28, 2017**.

The court **DENIES** the plaintiff's motion for relief and to strike the May 13, 2016 deposition. Dkt. No. 71.

The court **GRANTS** the defendants' motion for an extension of time to file dispositive motions. Dkt. No. 73. The court **ORDERS** that the deadline for filing dispositive motions is **EXTENDED** to the end of the day on **June 2, 2017**. The court has noted that the plaintiff already has filed a motion for

summary judgment. The plaintiff may stand on that motion, or may, by the June 2, 2017 deadline, file an amended motion for summary judgment.

The court **GRANTS** the plaintiff's motion for the return of exhibits. Dkt. No. 77. The court **ORDERS** that the clerk's office shall return to the plaintiff the documents at Dkt. Nos. 25-1 and 30-2.

The court **DENIES** the plaintiff's motion to amend and supplement pleadings. Dkt. No. 78.

The court **DENIES AS MOOT** the plaintiff's motion for privacy protection. Dkt. No. 79.

The court **DENIES** the plaintiff's motion for a protective order. Dkt. No. 81.

The court **DENIES** the plaintiff's motion to appoint counsel. Dkt. No. 82.

The court **DENIES AS MOOT** the plaintiff's second motion for service under Rule 4. Dkt. No. 90. The court **DENIES** the plaintiff's third motion to appoint counsel. Dkt. No. 91.

The court **DENIES** the plaintiff's motion to consolidate cases. Dkt. No. 94.

The court **DENIES AS MOOT** the plaintiff's motion for judgment. Dkt. No. 95.

The court **DENIES** the plaintiff's motion to file supplemental complaint. Dkt. No. 101.

The court **DENIES AS MOOT** the plaintiff's motion for leave to file excess pages. Dkt. No. 102.

The court **DENIES** the plaintiff's motion to add parties. Dkt. No. 104.

The court **DEFERS RULING** on the plaintiff's motion for summary judgment. Dkt. No. 110.

Dated in Milwaukee, Wisconsin this 7th day of February, 2017.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge