UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TRAVIS DELANEY WILLIAMS,

    Plaintiff,

v.                                                                                     Case No. 14-C-792

SIMEON ORTIZ, et al.,

    Defendants.

## DECISION AND ORDER

Plaintiff Travis Delaney Williams, proceeding *pro se*, filed this action under 42 U.S.C. § 1983 alleging that his civil rights were violated while he was a pretrial detainee at the Racine County Jail (the Jail). Currently before the court is plaintiff's motions for summary judgment and defendants Bradley Friend, Austin Isferding, and Robert Hernandez's (the Jail Defendants) motion for summary judgment. Defendants Simeon Ortiz, William Coe, and James Olstinske (the Medical Defendants) also filed a motion for summary judgment. The court will address plaintiff's motion for summary judgment against the Medical Defendants and the Medical Defendants' motion for summary judgment in a separate order. For the following reasons, the court will deny plaintiff's motions for summary judgment against the Jail Defendants and grant the Jail Defendants' motion for summary judgment.

## BACKGROUND

Plaintiff was booked into the Racine County Jail on May 8, 2013. ECF No. 186 at ¶ 1. On June 3, 2014, Hernandez wrote plaintiff a minor disciplinary ticket for disregarding a jail rule and recommended that plaintiff receive a twenty-four hour lockdown. *Id.* at ¶¶ 7–8; ECF No. 163 at

¶ 16. Plaintiff asserts that other inmates were also breaking the same rule, but Hernandez singled him out for punishment because he had filed a complaint against Hernandez. *Id.* at ¶¶ 7–8; ECF No. 163 at ¶¶ 15, 18.

Plaintiff appealed the disciplinary ticket to Captain Wearing, the Jail Administrator; however, Captain Wearing did not address the merits of plaintiff's appeal because plaintiff had not followed the appeal procedure set forth in the Jail Rule Book (also referred to as the Inmate Handbook or the Racine County Jail Handbook). ECF No. 170-1 at 2. The appeal procedure required an inmate to first submit an appeal to the Assistant Jail Administrator or the Lieutenant in charge of Jail operations. ECF No. 147-11 at 15. Only after the Assistant Jail Administrator or the Lieutenant in charge of Jail operations returns a decision to the inmate, may the inmate submit a written appeal to the Jail Administrator. *Id.* Plaintiff asserts that there is no Jail Rule Book. ECF No. 163 at ¶¶ 30, 33, 79; *but see id.* at ¶ 34.

Also on June 3, 2014, shortly after plaintiff was locked down, defendants assert that plaintiff made an obscene gesture and cursed at Hernandez, who wrote plaintiff another disciplinary ticket. ECF No. 186 at ¶ 10. After trying to convene a disciplinary hearing, Todd Lauer (not a defendant) imposed a sanction of nine days in segregation. *Id.* at ¶ 11. According to defendants, plaintiff refused to cooperate in the disciplinary hearing process. *Id.* at ¶ 12. Plaintiff denies that he made an obscene gesture and cursed at Hernandez; he also denies that he was provided an opportunity to participate in a disciplinary hearing. *Id.* at ¶¶ 10–12; ECF No. 163 at ¶¶ 21, 24. Plaintiff explains that, because there was no hearing, he could not appeal the hearing; however, once he learned that he had been given an additional nine days in segregation, he wrote to Captain Wearing. ECF No. 186 at ¶ 13; ECF No. 147-2 at 35. Captain Wearing did not address the merits of plaintiff's appeal

2

because plaintiff failed to follow the appeal procedure in the Jail Rule Book. ECF No. 147-2 at 35; ECF No. 147-11 at 15.

On June 15, 2014, plaintiff found a piece of hair and some other unidentified substance in his food, specifically, his stuffing. *Id.* at ¶ 15. He ate all of the food except for the contaminated stuffing and then asked for a new tray of food. *Id.* According to plaintiff, Isferding, at Hernandez's direction, put new stuffing on top of the old stuffing and refused to provide a new tray. *Id.* Plaintiff became upset and went into his cell. *Id.* Isferding tried to close plaintiff's cell gate, but plaintiff had placed toilet paper rolls between the bars, so Isferding could not close the gate. *Id.* Isferding removed the toilet paper rolls, but then plaintiff tied a sheet around the bars to prevent the gate from closing. *Id.* Isferding finished inspecting other cells on the unit and then ordered plaintiff to lockdown, to which plaintiff responded, "Fuck you!" *Id.* Eventually, other correctional officers approached plaintiff's cell and told him to turn around with his hands behind his back. *Id.* Plaintiff complied and was double-cuffed behind his back. *Id.*

Plaintiff does not dispute that he placed toilet paper rolls in his cell bars, tied a sheet around his cell bars, or cursed at the officers when told to lock down. *Id.*; *see* ECF No. 163 at ¶¶ 43, 46. Instead, he explains that he did those things because Isferding provoked him and having a conduct report issued was the only way to get his food contamination problems documented. ECF No. 186 at ¶¶ 15–16.

Patrick Noonan (not a defendant) came to plaintiff's cell to hold a due process hearing, but plaintiff states that he was so sick from consuming the contaminated food and so affected by medications provided to him by a nurse that he was unable to participate in the hearing. ECF No. 163 at ¶ 55. Plaintiff filed several grievances and appeals with respect to his food contamination and

3

the discipline he received. ECF No. 186 at ¶ 16. Friendly responded to plaintiff's complaints and Wearing denied his appeals. *Id.* at ¶ 17; ECF No. 163 at ¶ 57.

While in disciplinary segregation, plaintiff demanded that he be provided with a mattress accommodation because of his chronic pain and osteoarthritis. ECF No. 163 at ¶ 10. Typically, when inmates are in disciplinary segregation, their mattresses are removed from their cells during the day. *See id.* at ¶ 63. In December 2013, medical staff had ordered that plaintiff be allowed to keep one mattress during the day and two mattresses at night while in disciplinary segregation. ECF No. 186 at ¶ 19; ECF No. 163 at ¶ 61. However, defendants assert that, when plaintiff was placed in segregation in 2014, medical staff decided a mattress accommodation was unnecessary. ECF No. 186 at ¶¶ 18–21. Defendants assert that Friendly relied on the orders of medical staff when determining to deny plaintiff's request for a mattress accommodation while he was in disciplinary segregation. *Id.* at ¶ 21.

Plaintiff states that three times in June 2014 Dr. Simeon Ortiz, the doctor at the Jail, reaffirmed to him that he was to be allowed two mattresses at night and one mattress during the day while in segregation; however, other medical staff and defendants would interfere with those orders. ECF No. 163 at ¶¶ 67–74. According to Dr. Ortiz, at no time during June or July 2014, did he believe plaintiff needed two mattresses to accommodate his medical condition. ECF No. 152 at ¶¶ 20, 28.

Finally, from June to August 2014, defendants assert that they fulfilled all of plaintiff's orders for hygiene kits for indigent inmates. ECF No. 186 at ¶ 22. In response, plaintiff argues, "During my 18 month stay at Racine County Jail there's numerous and many times & instances where I would order a hygiene kit and it would not come or it was missing items . . . ." *Id.* In support, plaintiff cites

to Racine County Jail commissary receipts, which indicate that plaintiff was sent an indigent kit each week during the relevant time. *Id.*; ECF No. 147-10.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act (PLRA) applies to this case because plaintiff was incarcerated when he filed his complaint. According to the PLRA, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Various important policy goals give rise to the rule requiring administrative exhaustion, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record, and reducing the scope of litigation. *Smith v. Zachary*, 255 F.3d 446, 450–51 (7th Cir. 2001). If a court determines that an inmate failed to complete any step in the exhaustion process prior to filing a lawsuit, the court must dismiss the plaintiff's claim. *Perez v. Wis. Dept. of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits.").

The Jail Rule Book details the administrative remedies available to inmates who seek to dispute a sanction or penalty imposed after a disciplinary proceeding. *See* ECF No. 147-11 at 15. First, an inmate must appeal the disciplinary findings and sanction to the Assistant Jail Administrator or the Lieutenant in charge of Jail operations (here, Friend). *Id.* After an inmate receives a decision from the Assistant Jail Administrator or the Lieutenant in charge of Jail operations, he may appeal that decision to the Jail Administrator (here, Wearing). *Id.* The appeal must be in writing, and it must

be submitted within twenty-four hours of the finding decision. *Id.* On June 3, 2014, Hernandez issued plaintiff a disciplinary ticket for using the dayroom shower during an unauthorized time. Plaintiff attempted to appeal this disciplinary ticket by writing to Wearing, the Jail Administrator. Wearing responded to plaintiff, but he did not address the merits of plaintiff's appeal; instead, he directed plaintiff to the appeal process in the Jail Rule Book.

Plaintiff does not deny that he failed to first appeal the disciplinary ticket to the Assistant Jail Administrator or the Lieutenant in charge of Jail operations as required by the Jail Rule Book. Instead, he argues that the appeal process was unknown and therefore unavailable to him because he did not have access to the Jail Rule Book.

Defendants explain that the Jail Rule Book (referred to as the handbook in defendants' brief) is available in every dayroom of the Jail and is provided to inmates upon request. Although plaintiff repeatedly asserts that there is no Jail Rule Book, he also asserts that the rule books/handbooks are fastened to the television sets in the dayrooms (ECF No. 163 at ¶ 79) and/or are posted to the dayroom windows for a day or so at a time (*id.* at ¶ 34). Accordingly, the court finds that plaintiff had access to the Jail Rule Book, and his argument that the appeal process was unknown and unavailable to him fails. The court further finds that plaintiff failed to complete every step in the exhaustion process as it relates to his due process claims and his retaliation claims against Hernandez.

Specifically, plaintiff skipped the first step of appealing Hernandez's disciplinary ticket recommending twenty-four hours of lockdown to the Assistant Jail Administrator or the Lieutenant in charge of Jail operations. Instead, he directed that appeal to Wearing, the Jail Administrator, in

6

the first instance. Because plaintiff failed to complete the first step in the exhaustion process, the court does not have discretion to decide the merits of those claims.

Similarly, the court cannot reach the merits of the claims plaintiff states in connection with the sanction he received after he allegedly made an obscene gesture and swore at Hernandez. Plaintiff denies that he made any gestures or comments to Hernandez; he further denies that he received a disciplinary hearing. Plaintiff argues that he could not timely appeal a non-existent hearing. He explains that he appealed the sanction of nine days in segregation as soon as he learned about it. In other words, he argues that his failure to appeal the sanction within twenty-four hours of its imposition should be excused.

It is not the *timing* of plaintiff's appeal that is at issue here, however; the issue is *who* plaintiff appealed to. As before, plaintiff appealed directly to Wearing, the Jail Administrator, rather than first appealing the sanction to the Assistant Jail Administrator or the Lieutenant in charge of Jail operations, as required by the Jail Rule Book. *See* ECF No. 147-2 at 35. Because the court concludes that plaintiff skipped the first step in the exhaustion process, it will dismiss plaintiff's claims in connection with his punishment of nine days in segregation.

Finally, the court must also dismiss plaintiff's claim that his due process rights were violated when Noonan held a disciplinary hearing despite plaintiff feeling ill from eating contaminated food and being incapacitated as a result of taking medication. The hearing occurred on June 5, 2014, yet plaintiff did not appeal the decision and sanction until June 9, 2014. ECF No. 147-2 at 10. As Friend explained in his response to plaintiff's appeal, the Jail Rule Book requires that appeals be submitted to a staff member within twenty-four hours of the decision. Plaintiff submitted multiple grievances about his contaminated food beginning on June 6, 2014, but he did not appeal the decision of the

7

disciplinary hearing until June 9. Because plaintiff failed to comply with the time requirements for filing an appeal, the court finds that he failed to exhaust the available administrative remedies in connection with those claims. The court will dismiss these claims without prejudice based on plaintiff's failure to exhaust his administrative remedies prior to filing his complaint.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

### A.  Deliberate Indifference

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (citations omitted). Although plaintiff was at all times relevant to his claims a pretrial detainee, "it is the due process clause of the

8

Fourteenth Amendment rather than the Eighth Amendment's proscription against cruel and unusual punishment which is the source of this right." *Rice v. Correctional Medical Services*, 675 F.3d 650, 664 (7th Cir. 2012). Nevertheless, essentially the same standard applies. *Id.*; *see also Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000) ("there is little practical difference between the two standards"). The deliberate indifference standard contains both an objective element—that the medical needs be sufficiently serious—and a subjective element—that the officials act with a sufficiently culpable state of mind. *Gutierrez*, 111 F.3d at 1369. To survive summary judgment the plaintiff must set forth sufficient evidence such that a jury could reasonably conclude that he has proven each element of the standard.

Plaintiff asserts that Friend was deliberately indifferent to his serious medical needs when he denied plaintiff the use of a single mattress during the day and a double mattress at night while plaintiff was in disciplinary segregation. Plaintiff explains that he was forced to sit on concrete or a metal bedframe during the day and that the single, thin mattress was insufficient support for him at night given the pain in his legs and feet.

Putting aside whether plaintiff satisfies his burden with respect to the objective prong, the court finds that plaintiff has not alleged facts such that a reasonable jury could conclude that Friend was deliberately indifferent to his medical condition. Plaintiff asserts that Dr. Ortiz *told* him on more than one occasion that he would order a double mattress for plaintiff, yet plaintiff has provided no actual orders from Dr. Ortiz to that effect, and Dr. Ortiz himself has denied that he made any such assurances. Even if Dr. Ortiz did make such assurances to plaintiff, Friend was not present during those interactions. As such, when determining whether to provide plaintiff with a mattress accommodation, Friend was obligated to rely on the written orders of Dr. Ortiz and his own

9

conversations with medical staff. Friend asserts, and the documentary evidence confirms, that Dr. Ortiz and other medical staff repeatedly indicated that plaintiff did not require a mattress accommodation. Because Friend is not a medical professional, it was acceptable for him to defer to the recommendations of medical staff and deny plaintiff's request for a mattress accommodation. *See Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (holding that non-medical defendants can rely on the expertise of medical personnel). The court finds that no reasonable jury could conclude that Friend was deliberately indifferent to plaintiff's medical condition.

**B.    Retaliation**

To prevail on a claim of retaliation, a plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [d]efendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Plaintiff alleged in his complaint that Isferding and William Coe (one of the Medical Defendants) denied him indigent hygiene kits days after he submitted a complaint about their alleged misconduct. Defendants dispute plaintiff's assertion, stating that they provided plaintiff with an indigent hygiene kit once per week during the relevant time period in June and July 2014. In support, they provided Jail commissary records, which show that an indigent kit was sent to plaintiff each week from June 23, 2014 through July 28, 2014.

Plaintiff does not directly address the commissary records. Instead, he states, "During my 18 month stay at Racine County Jail there's numerous and many times & instances where I would order a hygiene kit and it would not come or it was missing items . . . ." ECF No. 186 at ¶ 22. The court

10

did not allow plaintiff to proceed on such a broad claim. The relevant time period is not plaintiff's eighteen month stay at the Jail; the relevant time period is the end of June through July 2014. Because plaintiff has presented no evidence to rebut defendants' assertion that he was provided with indigent hygiene kits during the relevant time period, the court finds that no reasonable jury could conclude that plaintiff "suffered a deprivation that would likely deter First Amendment activity in the future." *Bridges*, 557 F.3d at 546. As such, Isferding is entitled to summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, plaintiff's motions for summary judgment as to the Jail Defendants (ECF Nos. 110, 140) are **DENIED**. The Jail Defendants' motion for summary judgment (ECF No. 144) is **GRANTED**.

**SO ORDERED** this 6th day of February, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
