UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TRAVIS DELANEY WILLIAMS,

        Plaintiff,

v.                                                        Case No. 14-C-792

SIMEON ORTIZ, et al.,

        Defendants.

---

## DECISION AND ORDER

---

Plaintiff Travis Delaney Williams, proceeding *pro se*, filed this action under 42 U.S.C. § 1983 alleging that his civil rights were violated while he was a pretrial detainee at the Racine County Jail (the Jail). Currently before the court is plaintiff's motions for summary judgment and defendants Simeon Ortiz, William Coe, and James Olstinske's (the Medical Defendants) motion for summary judgment. Defendants Bradley Friend, Austin Isferding, and Robert Hernandez (the Jail Defendants) also filed a motion for summary judgment. The court will address plaintiff's motions for summary judgment as to the Jail Defendants and the Jail Defendants' motion for summary judgment in a separate order. For the following reasons, the court will deny plaintiff's motions for summary judgment as to the Medical Defendants and grant the Medical Defendants' motion for summary judgment.

## BACKGROUND

Dr. Ortiz, Coe, and Olstinske were professionally licensed as a medical doctor, licensed practical nurse, and registered nurse, respectively, during the relevant time. ECF No. 197 at ¶ 8. They were employed by Correctional Healthcare Companies to provide healthcare to inmates at the

Racine County Jail (the Jail). *Id*. at ¶ 9. Plaintiff was booked into the Jail on May 8, 2013. ECF No. 152 at ¶ 14.

According to defendants, while at the Jail, plaintiff suffered from osteoarthritis and mild heel spurs. ECF No. 197 at ¶ 12. Defendants assert that these are common conditions which are treated by over-the-counter medications. *Id*. Plaintiff asserts that he suffered "from more than that" and argues that none of the defendants did anything to find out why he was in so much pain. *Id*.

Defendants explain that in December 2013 and possibly into early 2014, plaintiff was provided a double mattress as an accommodation. In February 2014, Dr. Ortiz again examined plaintiff and noted that he was not experiencing swelling in his knees or legs or tenderness in his calves. ECF No. 152 at ¶ 15. After consulting with the nursing staff, Dr. Ortiz determined that plaintiff did not require a mattress accommodation and that his barrage of requests was likely an effort to take advantage of the system and gain extra privileges. *Id.*

According to defendants, between June 5, 2014, and July 10, 2014, Dr. Ortiz or the nurse practitioner examined plaintiff at least five times. ECF No. 197 at ¶ 15. After reviewing the results of an x-ray, Dr. Ortiz diagnosed plaintiff with modest-sized bone spurs. *Id.* at ¶ 17. Plaintiff explains that, while this may be true, Nurse Coe or Olstinske interfered with Dr. Ortiz's examinations, told Dr. Ortiz that Jail policies prevented him from ordering a double mattress, and even hid behind filing cabinets to intimidate Dr. Ortiz. *Id.* at ¶ 15.

On June 12, 2014, Dr. Ortiz assessed plaintiff's complaints of hip pain and noted that plaintiff was requesting an extra mattress. *Id.* at ¶ 18. Dr. Ortiz did not believe that his condition warranted an extra mattress; instead, he continued plaintiff's prescribed medications and reminded plaintiff of previous orders from medical staff that plaintiff elevate his legs while he was seated or laying down.

2

*Id.* Similarly, on July 1, 2014, Dr. Ortiz assessed plaintiff for arm and shin pain. *Id.* Dr. Ortiz continued plaintiff's ibuprofen prescription but did not order that plaintiff receive a second mattress. *Id.*

On July 9, 2014, Williams was assessed by the nurse practitioner (not a defendant); she noted plaintiff's complaints of severe chronic pain, but she also noted that he "was able to stand during visit without any difficulty" and that she observed no swelling, bruising, or tenderness. *Id.* at ¶ 20. The next day, Dr. Ortiz examined plaintiff; he also did not observe any evidence of swelling in plaintiff's legs, and he noted that plaintiff could stand, walk, and extend his legs against his knees. *Id.* at ¶ 21. Dr. Ortiz confirmed his diagnosis of degenerative arthritis, prescribed elastic knee support, and continued the two pain medications plaintiff was already taking. *Id.* Plaintiff argues that Dr. Ortiz and the nurse practitioner are lying. *Id.* at ¶¶ 19–21.

Throughout June and July 2014, plaintiff received, in addition to half a dozen medications, 800mg of ibuprofen twice per day for chronic pain and, at times, Tylenol. *Id.* at ¶ 22. Plaintiff asserts that the ibuprofen failed to address his pain and Dr. Ortiz never tried any other medications. *Id.*

Dr. Ortiz asserts that, at no time in June or July 2014, did he believe that an extra mattress was necessary to accommodate plaintiff's medical condition. *Id.* at ¶ 26. In addition, defendants assert that, at no time, did any nurse interfere with Dr. Ortiz's treatment of plaintiff. *Id.* at ¶ 27. Defendants explain that, as the physician, Dr. Ortiz would issue treatment orders and nursing staff would carry out those orders. *Id.*

On July 3, 2014, defendants assert that plaintiff threw his medication at Coe, who reported the incident to correctional officer Isferding. *Id.* at ¶ 32. Plaintiff denies that he threw anything at Coe. *Id.* Coe explains that, as a nurse, he has no authority to discipline inmates. *Id.* at ¶ 33. While

3

this may be so, plaintiff argues that Coe was still free to confer with Isferding and suggest to Isferding how plaintiff should be punished. *Id*. Coe asserts that he did not ask or direct Isferding to implement any specific punishment or sanction against plaintiff; in fact, he is unaware of whether plaintiff was ever disciplined for this incident. *Id.* at ¶ 34.

On September 22, 2015, U.S. District Court Judge Pamela Pepper (the judge assigned to the case at that time) screened plaintiff's complaint and allowed him to proceed on Fourteenth Amendment claims against the Medical Defendants based on his allegations that they denied him a mattress accommodation while he was in disciplinary segregation. ECF No. 10 at 11. She also allowed him to proceed on a retaliation claim against Coe based on his allegations that he and Isferding denied him indigent hygiene kits days after plaintiff wrote them up for misconduct. *Id*. at 11–12.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and

on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

### A. Deliberate Indifference

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (citations omitted). Because plaintiff was at all times relevant to his claims a pretrial detainee, "it is the due process clause of the Fourteenth Amendment rather than the Eighth Amendment's proscription against cruel and unusual punishment which is the source of this right." *Rice v. Correctional Medical Services*, 675 F.3d 650, 664 (7th Cir. 2012). Nevertheless, essentially the same standard applies. *Id.*; *see also Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000) ("there is little practical difference between the two standards"). The deliberate indifference standard contains both an objective element—that the medical needs be sufficiently serious—and a subjective element—that the officials act with a sufficiently culpable state of mind. *Gutierrez*, 111 F.3d at 1369. To survive summary judgment the plaintiff must set forth sufficient evidence such that a jury could reasonably conclude that he has proven each element of the standard.

With regard to the second element, the Court of Appeals for the Seventh Circuit has repeatedly held that "[n]egligence, gross negligence, or 'recklessness' as the term is used in tort cases is not enough." *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987) (citations omitted). A plaintiff must demonstrate something approaching a total unconcern for his welfare in the face of

5

serious risks or a conscious, culpable refusal to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992).

In the medical context, a complaint that a medical professional has merely been negligent in diagnosing or treating an inmate's medical condition is insufficient to give rise to a claim under the Constitution. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976). A medical professional's exercise of judgment or prescribed course of treatment will be held to be deliberately indifferent only if the judgment and/or treatment "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Estate of Cole v. Fromm*, 94 F.3d 254, 262 (7th Cir. 1996). In other words, an inmate's disagreement with a doctor's course of treatment is insufficient on its own to prove that a constitutional violation occurred. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006).

Plaintiff asserts that the Medical Defendants were deliberately indifferent to his serious medical needs when they denied him the use of a single mattress during the day and a double mattress at night while he was in disciplinary segregation. Plaintiff explains that sitting on concrete or a metal bedframe during the day and sleeping on a single, thin mattress at night exacerbated his medical condition and caused him great pain.[1]

---

[1] Plaintiff also argues that the Medical Defendants demonstrated deliberate indifference to his serious medical needs when Dr. Ortiz refused to prescribe him a narcotic pain medication, forged documents to support his refusal to treat plaintiff during his eighteen month stay at the Jail, and lied about prescribing a knee brace; and when nursing staff spit in his medication. Judge Pepper did not allow plaintiff to proceed on these claims. *See* ECF No. 10 at 10–11. The only claims at issue in this case with respect to the Medical Defendants arise out of plaintiff's allegations that he was denied a mattress accommodation and indigent hygiene kits. The court will not address allegations that are raised for the first time in plaintiff's summary judgment materials.

6

Putting aside whether plaintiff satisfies his burden with respect to the objective prong, the court finds that plaintiff has not alleged facts such that a reasonable jury could conclude that the Medical Defendants were deliberately indifferent to his medical needs when Dr. Ortiz denied his request for a mattress accommodation.

First, Coe and Olstinke did not have authority to issue treatment orders for plaintiff. *See* ECF No. 197 at ¶ 31. According to defendants, nurses administer medications prescribed by a doctor or nurse practitioner, implement existing orders, or implement pre-existing, pre-approved treatment protocols for common, routine complaints. *Id.* Plaintiff disagrees with this characterization of a nurse's duties, but he provides no evidence to support his disagreement. Plaintiff does not have personal knowledge of what nurses are and are not authorized to do, so his say-so, with nothing more, is insufficient to create a question of fact on this point. Plaintiff also argues that the nurses intimidated Dr. Ortiz by hiding behind cabinets and telling him what he could and could not order under Jail policies. The Medical Defendants deny that Coe or Olstinske attempted to interfere with Dr. Ortiz's treatment. ECF No. 197 at ¶ 30. Again, plaintiff's assertions, with nothing more, are insufficient to create a question of fact. While plaintiff may have drawn these conclusions from behaviors he observed, the Medical Defendants assert that his conclusions are incorrect. Dr. Ortiz states that he alone decided plaintiff was not in need of a mattress accommodation and the nurses did nothing to interfere with his decision. Plaintiff's assertions to the contrary are baseless and therefore insufficient to create a triable question of fact.

Because the evidence demonstrates that Coe and Olstinske were not authorized to grant plaintiff's request (or override Dr. Ortiz's denial of plaintiff's request) for a mattress accommodation and that they did not interfere with Dr. Ortiz's decision, the court concludes that they were not

7

personally involved in the alleged constitutional violation. Under § 1983, liability is premised on personal involvement—without it, there can be no liability. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("liability does not attach unless the individual defendant caused or participated in a constitutional deprivation"). Coe and Olstinske are entitled to summary judgment on this claim.

The court also finds that no jury could reasonably conclude that Dr. Ortiz was deliberately indifferent to plaintiff's medical needs when he denied his request for a mattress accommodation. The medical records confirm Dr. Ortiz's assertions that he examined plaintiff multiple times during the relevant time period. Dr. Ortiz repeatedly notes in the medical records that he observed no swelling in plaintiff's legs and that plaintiff was able to walk and stand without difficulty. The medical records also confirm that Dr. Ortiz ordered an x-ray and prescribed over-the-counter medications to address plaintiff's complaints of pain. In addition, Dr. Ortiz concluded based on his interactions with plaintiff that plaintiff's many complaints were merely his way of manipulating the system to get special privileges.

Dr. Ortiz's assessment may not have been correct, but that is not a sufficient basis on its own to conclude that he was deliberately indifferent. Instead, plaintiff must provide evidence from which a jury could reasonably conclude that Dr. Ortiz's conclusions were such a substantial departure from accepted professional judgment that he basically exercised no judgment at all. Plaintiff has failed to provide such evidence. After examining plaintiff on multiple occasions, ordering diagnostic tests, and discussing plaintiff's complaints with him, Dr. Ortiz decided that plaintiff did not need a mattress accommodation. Plaintiff's disagreement with that conclusion is not enough for a jury to conclude that Dr. Ortiz was deliberately indifferent to plaintiff's condition. Dr. Ortiz is entitled to summary judgment on this claim.

**B.     Retaliation**

To prevail on a claim of retaliation, a plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [d]efendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Plaintiff alleged in his complaint that Isferding (one of the Jail Defendants) and Coe denied him indigent hygiene kits days after he submitted a complaint about their alleged misconduct. Both the Jail and Medical Defendants dispute plaintiff's assertion. The Jail Defendants explain that plaintiff was provided with an indigent hygiene kit once per week during the relevant time period in June and July 2014. ECF No. 186 at ¶ 22. In support, the Jail Defendants provided the Jail commissary records, which show that an indigent kit was sent to plaintiff each week from June 23, 2014 through July 28, 2014. ECF No. 147-10.

Plaintiff does not directly address the commissary records. Instead, he states, "During my 18 month stay at Racine County Jail there's numerous and many times & instances where I would order a hygiene kit and it would not come or it was missing items . . . ." ECF No. 186 at ¶ 22. The court did not allow plaintiff to proceed on such a broad claim. The relevant time period is not plaintiff's eighteen month stay at the Jail; the relevant time period is the end of June through July 2014. Because plaintiff presents no evidence to rebut the defendants' assertions that he was provided with indigent hygiene kits during the relevant time period, the court finds that no reasonable jury could conclude that plaintiff "suffered a deprivation that would likely deter First Amendment activity in the future." *Bridges*, 557 F.3d at 546.

In addition, to the extent plaintiff asserts that he was punished as a result of complaints against Coe, Coe explains that he had no authority to discipline plaintiff, nor did he encourage Isferding to discipline plaintiff. ECF No. 197 at ¶ 34. Coe states that he has no idea whether plaintiff was disciplined after he reported to Isferding that plaintiff had thrown medication at him. *Id.* Plaintiff disputes Coe's assertions, arguing that Coe and Isferding plotted against him, but plaintiff provides no evidence to support these assertions. Plaintiff's speculation about what occurred between Coe and Isferding is insufficient to create a triable issue of fact. *See Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1127 (7th Cir. 1996) ("Speculation is insufficient to withstand summary judgment; the nonmoving party must do more than simply show there is some metaphysical doubt as to the material facts.") (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Coe is entitled to summary judgment on plaintiff's retaliation claim.

## CONCLUSION

For the foregoing reasons, plaintiff's motions for summary judgment as to the Medical Defendants (ECF Nos. 110, 140) are **DENIED**. The Medical Defendants' motion for summary judgment (ECF No. 149) is **GRANTED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this 6th day of February, 2018.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court

> This order and the judgment to follow are final. The plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If the plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If the plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*
>
> Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).
>
> A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.